## Case No. 12,928.

### The SKYLARK.

[2 Biss. 251;[1] 3 Bench & Bar (N. S.) 38; 5 Leg. Gaz. 336; 18 Int. Rev. Rec. 164, note.]

District Court, N. D. Illinois. Feb., 1870.

ADMIRALTY — DISTRIBUTION OF SURPLUS — EQUITY POWERS OF COURT—EXECUTION FROM STATE COURT — MARITIME LIENS.

1. The district court in admiralty has the right to exercise equity powers in the distribution of a surplus arising from a sale under decree to the parties entitled to such surplus, whether by federal or state law: and it is immaterial whether these parties have maritime liens.

2. The reason is, because there is a fund in court which cannot be taken out except by its order, and parties having rights in the vessel can only exercise them by coming into this court.

3. A purchaser under execution from a state court has no rights as against a decree in this court enforcing a maritime lien.

4. If he became the purchaser, the amount which he bid must be applied on his debt, and the balance only can be proved as a claim in this court.

5. It seems, that no claim would be valid as against a mortgage duly recorded under the act of July 29, 1850 [9 Stat. 440], except the lien by bottomry therein except·v..

6. Also, that a state legislature, by declaring a claim to be a lien upon a vessel, cannot override a mortgage duly recorded according to the law of congress.

[Cited in The Favorite. Case No. 4,699; The William T. Graves, Id. 17,759; The J. E. Rumbell, 148 U. S. 17. 13 Sup. Ct. 502.]

In admiralty. The Skylark belonged to the Lake Michigan Transportation Company in 1868, during which season various claims against the vessel were created. On the 16th of October, John Barker sued out an attachment against her in the state court at Chicago, obtained judgment, and at the sale under execution, bought her in for about $300. Subsequently a libel for wages of seamen was filed in this court, upon which a decree was obtained, and on the 14th of March, 1869. she was sold for $4,150, the money brought into court and all the maritime claims paid. Barker then filed a claim to the surplus as owner of the vessel, and other parties filed claims as material men, for supplies, etc.

[See Case No. 12,929.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

DRUMMOND, Circuit Judge. These claimants, it is conceded, have not what are termed maritime liens. Their liens are under the laws of the state—either of Illinois or of Michigan. The question of distribution came before the court at a former day, between Barker, the purchaser under the attachment, and the assignee in bankruptcy of the company—the original owner of the vessel. The question arose whether the vessel belonged to Barker or to the assignee. The court held that as between these two parties Barker was the owner, because he had purchased at a sale on a final process, issued before the commencement of the proceedings in bankruptcy, and that he had acted in good faith so far as the court could see, and, therefore, his right was paramount. The present, however, is not a controversy between two parties claiming to be owners of the vessel, but between two parties claiming a right to the surplus remaining after sale under a decree which overrides all other rights, as well claims under the state law, as under the attachment at the instance of Mr. Barker.

There can be no doubt of the right of this court exercising equity powers as a court of admiralty always exercises them in a proper case, to distribute the surplus to the parties who are entitled to it, either by federal or state law, and it is immaterial whether the parties thus claiming the surplus have maritime liens or not. It is not on that account that the court exercises this power as a court of admiralty, but because there is a fund in court which cannot be taken out of court except by its order. Parties having rights to this vessel cannot exercise them, except by coming into this court. The vessel has been sold under a paramount right, and the party who holds under the sale in admiralty, has, of course, a perfect title; therefore, they must come into this court that their rights may be adjudicated.

The point is, what are their claims upon this fund? It is insisted that because the court held as it did, between Barker and the assignee, that it must now hold—these parties having no maritime liens—that Barker's right is superior to theirs. It by no means follows. That was a question between two parties claiming to be owners. This is between creditors; and Barker as against this decree has no right whatever. It is also insisted that as this court decided in the case of The Grace Greenwood [Case No. 5,652], that a mortgagee holding a ship under a mortgage recorded in conformity with the act of congress of July 29, 1850, had a prior right as against parties who had claims declared to be liens by the state law, that therefore the court must hold that Barker has a prior right. That is a non sequitur for the reason already stated. The question in that case was whether claims for supplies created after the mortgage was recorded, should override the rights of the

mortgagee. In the absence of any special equities in favor of those claimants, it was held that the mortgage was a superior right.

The language of the act of 1850 is, that "no bill of sale, mortgage, hypothecation or conveyance of any vessel or part of any vessel of the United States shall be valid as against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, etc., be recorded in the office of the collector of the customs where such vessel is registered or enrolled: Provided, that the lien by bottomry on any vessel created during her voyage by a loan of money, etc., shall not lose its priority, or be in any way affected by the provisions of this act." 9 Stat. 440. Bearing in mind the language of the supreme court in the Reed Case (Pratt v. Reed, 19 How. [60 U. S.] 359), which is familiar to all admiralty lawyers, it is doubtful whether any claim, except in the character mentioned in this · proviso, would be valid as against a mortgage properly recorded under this act of congress.

I wish it distinctly understood that I shall not hold, unless told so to do by the supreme court of the United States, that every claim which a state legislature may declare to be a lien against a vessel, shall override a mortgage properly recorded under the law of congress. These were the reasons that produced the decision in the Grace Greenwood Case [supra], to which decision I adhere.

These parties stand, so far as their claims in equity are concerned, upon an equal footing. Barker bid in the Skylark at his own risk, obtaining no other title than the judgment, execution and sale gave him, and, as against the decree of this court, no title whatever. As a creditor, he has no superior right to these claimants. If the judgments obtained by him were for supplies, so are these claims for supplies. It is simply a question of how this fund is to be distributed, and what are the equities operating upon its distribution. I believe the sum bid for the vessel by Barker was much less than the amount of the judgment. The amount for which he obtained his title, of course, must stand as a satisfaction upon the debt, but the balance, provided it has the same equity that the claim of these other parties have, shall be treated in the same way. The claim of Mr. Stevens will be disallowed altogether. He was a stockholder in the company, and superintendent in the management of its business, and in the running of its boats. I think it would be unjust that he should have the same advantage as third parties, who furnished supplies on the faith of his contracts. I shall allow Barker to come in, and if he is on the same footing as the rest, I shall order the balance to be distributed among them pro rata. ·

Decree accordingly.

NOTE. See The John Richards [Case No. 7,361], and cases there cited; also Ashbrook v. The Golden Gate [Id. 574]. That a state law cannot impair a maritime lien, see decision of Wells, J.,—district of Missouri,—in case last above cited. In the case of Marsh v. The Minnie [Id. 9,117],—district of South Carolina,— Magrath. J., held that a maritime lien for repairs in a case of necessity must be preferred to a mortgage duly recorded, but that the mortgagee's lien was prior to all other parties. That seamen's lien for wages is not divested by sale of vessel on execution against owner, see Foster v. The Pilot [Id. 4,980]. A general maritime lien cannot be divested by the legislature of a state. An admiralty sale alone can judicially pass the title to a vessel, discharged of liens. Hill v. The Golden Gate [Id. 6,491]. Where a vessel was mortgaged in Maine, and afterward went to New Orleans, where she was attached by an ordinary creditor, and the mortgagee intervened and claimed the vessel under his mortgage, held the attachment should be set aside, the suit dismissed, and the mortgagee declared the owner. Dobbin v. Hewett. 19 La. Ann. 513. See The N. W. Thomas [Case No. 10,-386], and authorities there cited.