## THE J. E. RUMBELL.[1]

CERTIFICATE FROM THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE SEVENTH CIRCUIT.

No. 1117. Submitted October 14, 1892. — Decided March 6, 1893.

In the admiralty and maritime law of the United States the following propositions are established by the decisions of this Court:

    (1) For necessary repairs or supplies furnished to a vessel in a foreign port, a lien is given by the general maritime law, following the civil law, and may be enforced in admiralty;

    (2) For repairs or supplies in the home port of the vessel, no lien exists, or can be enforced in admiralty, under the general law, independently of local statute;

    (3) Whenever the statute of a State gives a lien, to be enforced by process in rem against the vessel, for repairs or supplies in her home port, this lien, being similar to the lien arising in a foreign port under the general law, is in the nature of a maritime lien, and therefore may be enforced in admiralty in the courts of the United States;

    (4) This lien, in the nature of a maritime lien, and to be enforced by process in the nature of admiralty process, is within the exclusive jurisdiction of the courts of the United States, sitting in admiralty.

---

[1] The docket title of this case is *George C. Finney et al. Appellants*, v. *F. August Reich et al.*

In the admiralty courts of the United States, a lien upon a vessel for necessary supplies and repairs in her home port, given by the statute of a State, and to be enforced by proceedings *in rem* in the nature of admiralty process, takes precedence of a prior mortgage, recorded under section 4192 of the Revised Statutes.

This was a certificate from the Circuit Court of Appeals for the Seventh Circuit under the act of March 3, 1891, c. 517, § 6, (26 Stat. 828,) of a question upon which it desired the instruction of this court, in an admiralty appeal. The case, as stated in the certificate, was as follows:

On August 15, 1891, under a writ of *venditioni exponas* from the District Court of the United States for the Northern District of Illinois, in admiralty, the propeller J. E. Rumbell was sold by the marshal for the sum of $1850, and the proceeds were paid into the registry of the court.

On August 21, 1891, F. August Reich and August Reich, partners under the name of F. A. Reich & Son, former owners of the ve sel, who had sold and delivered her to Michael C. Hayes on April 23, 1891, filed a petition against those proceeds, claiming the sum of $3000, and interest, due upon notes given to them by Hayes for the purchase money, and secured by mortgage of the vessel, executed by Hayes to them on the day of the sale, and recorded on the same day in the office of the collector of customs of the port of Chicago, the residence of the owner and the home port of the vessel, under section 4192 of the Revised Statutes of the United States. In that mortgage it was provided that if at any time there should be any default of payment, or if the mortgagees should deem themselves in danger of losing any part of the debt by delaying its collection until the time limited for its payment, or if the mortgagor should suffer the vessel to run in debt beyond the sum of $150, the mortgagees might immediately take possession of the vessel and, after ten days' notice to the mortgagor, sell her to satisfy the mortgage debt. The petition of the mortgagees alleged that each of these contingencies had happened.

On September 16, 1891, George C. Finney and others filed a petition against said proceeds, for sums due to the petitioners

severally; and amounting in all to $1108.56, for shipchandler's supplies, engineer's supplies, groceries, provisions, fuel, lumber and repairs, bought for and furnished to the vessel at the port of Chicago, since the recording of the mortgage, and used for the benefit of the vessel, and alleged to have been reasonable and proper to be furnished and done; and also for the sum of $220 due to Patrick Bowe, one of these petitioners, for services as master of the vessel, since the recording of the mortgage; "for which supplies, repairs and services" (the certificate stated) "there was a lien upon the said vessel under the laws of the State of Illinois."

The District Court found and adjudged that the sums claimed in each petition were due to the petitioners respectively; that in the distribution of the proceeds the claim of the mortgagees, Reich & Son, should have priority over that of the other petitioners, Finney and others; and that the entire proceeds of the sale of the vessel, amounting (after payment of seamen's wages and preferred claims for towage and salvage) to $1105.59, should be paid to the mortgagees.

Finney and others appealed to the Circuit Court of Appeals, which certified to this court the following question: " Whether a claim arising upon a vessel mortgage is to be preferred to the claim for supplies and necessaries furnished to a vessel in its home port in the State of Illinois subsequently to the date of the recording of the mortgage? "

*Mr. C. E. Kremer* for appellants.

*Mr. Charles E. Pope* for appellees.

I. The appellants had no lien under the general maritime law, and the contracts under which they furnished the supplies are not maritime contracts.

It has been repeatedly held by this court, by the Supreme Court of Illinois and by other tribunals, that persons furnishing repairs and supplies to a vessel in her home port, do not acquire thereby any lien upon the vessel by the general maritime law, as received in the United States. *The Lotta-*

*wanna*, 21 Wall. 558; *Tug Boat, E. P. Dorr* v. *Waldron*, 62 Illinois, 221; *The Mary Bell*, 1 Sawyer, 135; *The Josephine Spangler*, 9 Fed. Rep. 773; *The Marcelia Ann*, 34 Fed. Rep. 142; *The Madrid*, 40 Fed. Rep. 677.

The reasons why a maritime lien is given for supplies furnished in a foreign port, are obvious. To promote commerce and enable vessels in a foreign port to procure without delay needed supplies, there is a necessity for the pledging of the credit of the vessel. Vessel owners usually have no credit in a foreign port, and, if material-men in a foreign port had to inquire into the credit of the owner residing in the home port, or ascertain whether any mortgage was or was not there recorded, great delay and great loss to commerce would inevitably result. To make such inquiries in the home port, by material-men residing there, would cause no loss or delay, but would, on the contrary, save in many cases very great loss. *The Madrid*, 40 Fed. Rep. 677.

There is no allegation or proof that the supplies, repairs or services furnished in this case were necessary, or that they were furnished on the credit of the vessel. Under the general maritime law a lien could not attach in the absence of those facts. *The Grapeshot*, 9 Wall. 129; *Pratt* v. *Reed*, 19 How. 359; *The Lady Franklin*, 1 Bissell, 557; *Williamson* v. *Hogan*, 46 Illinois, 504; *The Rapid Transit*, 11 Fed. Rep. 322. In the opinion in the latter case it is said: "It seems to me a fair implication that whenever a State attaches a lien to a maritime contract to be enforced in the admiralty, whatever would operate under the maritime law of that court to waive, forfeit or postpone a lien of like character, whether considered in its relation to liens of another grade or in its relation to other liens in the same grade, should have the same effect on the lien created by the State, and that it is intended that the strict letter of the statute should be so construed."

II. The appellants have no lien other than the one given by the Illinois Statute of 1874, and such lien is subject to the prior mortgage of appellees.

Being a statutory and not a maritime lien, the question of its effect and extent depends, in a very great measure, upon

the statute creating it. The statutes of the various States differ materially in their several requirements necessary to create a lien, and also in the extent and effect of the lien created. These different requirements have been recognized by the Supreme Court of the United States in the case of *The Lottawanna*, 21 Wall. 558, where the requirement of the Louisiana statute for the recording of a lien not having been complied with, it was held that no lien was obtained. And in the case of *The Edith*, 94 U. S. 518, it was held that the rights of the parties under the New York statute were governed and limited by the provisions of that statute. See also *The Marcelia Ann*, 34 Fed. Rep. 142.

In 1869, Judge Drummond, in deciding *The Grace Greenwood*, 2 Bissell, 131, said that, under the Illinois Statutes, such a mortgage as that of appellees would be " a valid and binding security upon the property, and one which the claims of material-men, under the state law, cannot supersede or override, and that the mortgage took precedence over supplies in the home port."

Judge Drummond again decided the same question in the same way in the case of *The Skylark*, 2 Bissell, 251, and said : " I wish it distinctly understood that I shall not hold, unless told to do so by the Supreme Court of the United States, that every claim which a state legislature may declare to be a lien against a vessel, shall override a mortgage properly recorded under the law of Congress."

In the case of *The Kate Hinchman*, Judge Blodgett, in the District Court, decided the same way. On appeal to the Circuit Court, Judge Drummond affirmed the decree of the District Court, and said, that although a lien existing only by the state law could be enforced in admiralty, " it by no means follows that, because a law of the State gave a lien, it is superior to a mortgage. . . . It seems to me, as between these different liens existing in this case, that of the mortgage is paramount." 7 Bissell, 238.

Since the first decision of Judge Drummond in 1869, the question has been decided repeatedly in the Seventh Circuit in the same way, in spite of the numerous times when the

proctors, for negligent material-men, have endeavored to obtain the adoption of a contrary decision. Appeals have been taken from the District Court and argued four times in the Circuit Court of the Seventh Circuit, on one occasion before Justice Harlan, but the judges hearing such appeals have invariably refused to reverse the former decisions.

Upon two occasions the question has been passed upon by the Supreme Court of Illinois, and decided in the same way. In the case of *The Great West (No. 2)* v. *Oberndorf*, 57 Illinois, 168, the court held that the lien of the material-men upon vessels for supplies furnished in the home port was inferior to that of a prior mortgage. This decision was followed by that of *The Hilton* v. *Miller*, 62 Illinois, 230, in which the court says, that a prior mortgage of a vessel has precedence of the lien of a material-man subsequently acquired, is settled by the case of the *Barque Great. West (No. 2)* v. *Oberndorf*, 57 Illinois, 168. The Illinois law, at the time of these decisions, was construed in the case last mentioned to create a lien on the vessel, which is all that the present statute of 1874 does.

The liens given in the various States are given by widely different statutes. The rule in Louisiana, for instance, is essentially different from that of Illinois. The lien given by the Illinois statute is a secret one, existing for the period of nine months without requiring any notice to be given of it to any person, or the filing or recording of any such notice. The statute of Louisiana on the contrary, provides that such lien shall have no preference over third persons, unless it has been recorded in the parish where the vessel is, on the day when the contract was entered into. In the case of *The Lottawanna*, already cited, this recording was held essential to obtaining any lien.

The statutes of many other States also require, as a condition to the maintenance of a lien in similar cases, the filing or recording of a notice of the lien.

In North Carolina notice of the lien has to be filed in the same manner as notices of other statutory liens are.

In Massachusetts the lien is conditioned upon the filing of

a sworn statement of the claim with the clerk of the city or town where the vessel was, within four days after the vessel departs from port.

In South Carolina a similar statement has to be filed with the clerk of the Court of Common Pleas within the same time.

In Maryland also a statement of the claim must be filed under oath with the clerk of the Circuit Court.

In New York specifications of any such claim must be filed in the office of the clerk of the county in which the debts were contracted, and in the office of the auditor of the canal department, within thirty days after the debt was contracted.

In Pennsylvania the lien continues only between the contracting of such debts and the time when the vessel proceeds on her next voyage.

In Mississippi the case of *The Josephine Spangler*, 9 Fed. Rep. 773, held, that materials and supplies furnished at the home port are only liens, by force of the State's statutes, and therefore do not stand on the same footing with maritime liens, so that their priority depends upon whether they attach before or after the mortgage lien commenced. This position is sustained by Judge Drummond in *The Grace Greenwood*, which was followed by Judge Blodgett in *The Kate Hinchman*, and again by Judge Woods in *The John T. Moore*, 3 Woods, 61. This is still the rule in Mississippi and Maryland. *The Marcelia Ann*, above cited. See also as to the law of Ohio, *Scott's Case*, 1 Abbott U. S. 336.

Not only do the various state statutes differ in regard to the giving of notice of the lien claim, but they also differ materially in the effect and scope of the lien.

In Maryland the lien is not entitled to priority over a prior mortgage or bill of sale. In Vermont it has "precedence of all other claims and liens." In Pennsylvania it is to be "in preference to any other debt due from the owners" of the vessel. In New York it is provided that it shall be preferred to all other liens thereon, except mariner's wages. *The Canada*, 7 Fed. Rep. 730. In Massachusetts the lien is "preferred to all others on such vessel except that for mariner's wages." And so also in South Carolina. *The Island City*, 1 Lowell,

375. In Missouri such liens shall have precedence of all other liens and claims against such boat or vessel. In Kentucky the statute of 1852 gave the local lien preference over all other liens of like character, for work done out of the State (Kentucky), thus preferring them to maritime liens for supplies. *The Rapid Transit*, 11 Fed. Rep. 332. In Oregon the liens have precedence over all other liens and claims against such boat or vessel. In California they have preference over all other demands. *The Harrison*, 1 Sawyer, 353.

The statute of Illinois simply gives "a lien," so that no decision can be properly considered as contrary to the decisions in Illinois unless it appears that it was rendered upon a state statute in all respects similar to that of Illinois, giving a simple secret lien.

In 1872 the same question was presented for decision, in the Privy Council on appeal from the High Court of Admiralty, in the case of *The Two Ellens*, L. R. 4 P. C. 161. In an interesting opinion Lord Justice Mellish then said, p. 166: "There have been several cases in the Court of Admiralty on this point, and the decisions are to a certain extent conflicting. . . . The question has to be determined by their lordships, and it may be said, perhaps, that as far as authority is concerned, the authorities are very equally balanced." After a full discussion of the English cases the court decided in favor of the priority of the mortgage over claims for repairs and supplies.

In 1884 the question was again presented to the Privy Council, and decided in the same way, in the case of *The Rio Tinto*, 9 App. Cas. 356, so that the law of England as settled by the court of last resort is now that the claim of the mortgagee is superior to that of the domestic lien holder.

III. By repeated decisions in the Seventh Circuit, the priority of a prior mortgage over home supplies has become established, as the *lex fori*, and such priority is a right of property. *The Lottawanna* and *The Madrid*, above cited.

Whether one lien is entitled to priority over another depends upon the *lex fori*. *The Union*, Lush. 128 ; *The Selah*, 4 Sawyer, 40. The priority of liens in admiralty is according

to that given by the *lex fori*, and is regulated by that law exclusively. *Graf Klot Trautvetter*, 8 Fed. Rep. 833.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

By the admiralty law, maritime liens or privileges for necessary advances made, or supplies furnished, to keep a vessel fit for sea, take precedence of all prior claims upon her, unless for seamen's wages or salvage. It is upon this ground, that such advances or supplies, made or furnished in good faith to the master in a foreign port, are preferred to a prior mortgage, or to a forfeiture to the United States for a precedent violation of the navigation laws. *The St. Jago de Cuba*, 9 Wheat. 409, 416; *The Emily Souder*, 17 Wall. 666, 672.

In *The St. Jago de Cuba*, Mr. Justice Johnson, in delivering judgment, and speaking of the lien of material-men and other implied liens under maritime contracts, said: "The whole object of giving admiralty process and priority of payment to privileged creditors is to furnish wings and legs to" the vessel, "to get back for the benefit of all concerned; that is, to complete her voyage." "In every case, the last lien given will supersede the proceeding. The last bottomry bond will ride over all that precede it; and an abandonment to a salvor will supersede every prior claim. The vessel must get on; this is the consideration which controls every other; and not only the vessel, but even the cargo, is *sub modo* subjected to this necessity." 9 Wheat. 416.

In *The Yankee Blade*, 19 How. 82, 89, 90, Mr. Justice Grier, speaking for this court, said: "The maritime privilege or lien is adopted from the civil law, and imports a tacit hypothecation of the subject of it. It is a *jus in re*, without actual possession or any right of possession. It accompanies the property into the hands of a *bona fide* purchaser. It can be executed and divested only by a proceeding *in rem*. This sort of proceeding against personal property is unknown to the common law, and is peculiar to the process of courts of admiralty. The foreign and other attachments of property in

the state courts, though by analogy loosely termed proceedings *in rem*, are evidently not within the category." "These principles will be found stated, and fully vindicated by authority, in the cases of *The Young Mechanic*, 2 Curtis C. C. 404, and *The Kiersage*, 2 Curtis C. C. 421."

Both the decisions of Mr. Justice Curtis, thus referred to, depended on a statute of Maine, giving in general terms a lien upon a vessel for labor performed or materials furnished in her construction or repair, without undertaking to fix the comparative precedence of such liens.

In *The Young Mechanic*, after elaborate discussion of the nature of such a lien, it was held to be a *jus in re*, a right of property in the thing itself, existing independently of possession ; " an appropriation made by the law, of a particular thing, as security for a debt or claim ; the law creating an incumbrance thereon, and vesting in the creditor what we term a special property in the thing, which subsists from the moment when the debt or claim arises, and accompanies the thing even into the hands of a purchaser." "Though tacitly created by the law, and to be executed only by the aid of a court of justice, and resulting in a judicial sale, it is as really a property in the thing, as the right of a pledgee, or the lien of a bailee for work ; " and is not " only a privilege to arrest the vessel for the debt, which, of itself, constitutes no incumbrance on the vessel, and becomes such only by virtue of an actual attachment." 2 Curtis C. C. 406, 410, 412.

In *The Kiersage*, Mr. Justice Curtis held that the lien for labor and materials in the home port had precedence over a prior mortgage ; and, after observing that, as he had held in *The Young Mechanic*, this lien " was, in substance, a tacit hypothecation of the vessel, as security for the debt ; " " a *jus in re*, constituting an incumbrance on the property by operation of law ; " he added : " And there can be no doubt that it takes effect wholly irrespective of the state of the title to the vessel. Whether the vessel belongs to one or more persons — whether the title has been so divided that one is a special and another a general owner, and however it may be incumbered, the law gives the lien on the thing. The mortgagees can have

no claim to be preferred over the lien-holder because of their priority in time ; for their interest in the vessel is as much subject to the statute lien, as the interest of any other party. It is not in the power of the owner, by his voluntary act, to withdraw any part of the title from the operation of the lien ; if he could, he might altogether defeat it." 2 Curtis C. C. 422, 423.

It was assumed in each of those cases that a lien, given by the local law, for building a ship, stood on the same ground as a lien, under the same law, for repairing her. It has since been decided, and is now settled, that a contract for building a ship, being a contract made on land and to be performed on land, is not a maritime contract, and that a lien to secure it, given by local statute, is not a maritime lien, and cannot, therefore, be enforced in admiralty. *The Jefferson*, 20 How. 393; *The Capitol*, 22 How. 129; *Edwards* v. *Elliott*, 21 Wall. 532. That fact, however, does not affect the strength of the reasoning, or the justness of the conclusions, of Mr. Justice Curtis, as regards liens for repairs and supplies; and, in relation to such liens, his view has been generally accepted in the admiralty courts of the United States.

"A maritime lien, unlike a lien at common law, may," said Mr. Justice Field, speaking for this court, "exist without possession of the thing upon which it is asserted, either actual or constructive. It confers, however, upon its holder such a right in the thing, that he may subject it to condemnation and sale to satisfy his claim or damages." "The only object of the proceedings *in rem* is to make this right, where it exists available — to carry it into effect. It subserves no other purpose." *The Rock Island Bridge*, 6 Wall. 213, 215. And in *The Lottawanna*, Mr. Justice Bradley, speaking of a lien given by a statute of Louisiana for repairs and supplies, said "a lien is a right of property, and not a mere matter of procedure." 21 Wall. 558, 579.

In the admiralty and maritime law of the United States, as declared and established by the decisions of this court, the following propositions are no longer doubtful :

1st. For necessary repairs or supplies furnished to a vessel

in a foreign port, a lien is given by the general maritime law, following the civil law, and may be enforced in admiralty. *The General Smith*, 4 Wheat. 438, 443; *The St. Jago de Cuba*, 9 Wheat. 409, 417; *The Virgin*, 8 Pet. 538, 550; *The Laura*, 19 How. 22; *The Grapeshot*, 9 Wall. 129; *The Lulu*, 10 Wall. 192; *The Kalorama*, 10 Wall. 204.

2d. For repairs or supplies in the home port of the vessel, no lien exists, or can be enforced in admiralty, under the general law, independently of local statute. *The General Smith*, and *The St. Jago de Cuba*, above cited; *The Lottawanna*, 21 Wall. 558; *The Edith*, 94 U. S. 518.

3d. Whenever the statute of a State gives a lien, to be enforced by process *in rem* against the vessel, for repairs or supplies in her home port, this lien, being similar to the lien arising in a foreign port under the general law, is in the nature of a maritime lien, and therefore may be enforced in admiralty in the courts of the United States. *The Planter*, 7 Pet. 324; *The St. Lawrence*, 1 Black, 522; *The Lottawanna*, 21 Wall. 558, 579, 580; Rule 12 in Admiralty, as amended in 1872, 13 Wall. xiv.

4th. This lien, in the nature of a maritime lien, and to be enforced by process in the nature of admiralty process, is within the exclusive jurisdiction of the courts of the United States, sitting in admiralty. *The Moses Taylor*, 4 Wall. 411; *The Hine*, 4 Wall. 555; *The Belfast*, 7 Wall. 624; *The Lottawanna*, 21 Wall. 558, 580; *Johnson* v. *Chicago Elevator Co.*, 119 U. S. 388, 397.

The fundamental reasons on which these propositions rest may be summed up thus: The admiralty and maritime jurisdiction is conferred on the courts of the United States by the Constitution, and cannot be enlarged or restricted by the legislation of a State. No State legislation, therefore, can bring within the admiralty jurisdiction of the national courts a subject not maritime in its nature. But when a right, maritime in its nature, and to be enforced by process in the nature of admiralty process, has been given by the statute of a State, the admiralty courts of the United States have jurisdiction, and exclusive jurisdiction, to enforce that right according to their

own rules of procedure. See, in addition to the cases above cited, *The Orleans*, 11 Pet. 175, 184; *Ex parte McNiel*, 13 Wall. 236, 243; *The Corsair*, 145 U. S. 335, 347.

The settled rules of jurisdiction and practice on this subject were stated by Mr. Justice Bradley in *The Lottawanna* as follows: "So long as Congress does not interpose to regulate the subject, the rights of material-men furnishing necessaries to a vessel in her home port may be regulated in each State by state legislation. State laws, it is true, cannot exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction, for it is a maritime contract, and they cannot alter the limits of that jurisdiction; nor can they confer it upon the state courts so as to enable them to proceed *in rem* for the enforcement of liens created by such state laws, for it is exclusively conferred upon the District Courts of the United States. They can only authorize the enforcement thereof by common law remedies, or such remedies as are equivalent thereto. But the District Courts of the United States, having jurisdiction of the contract as a maritime one, may enforce liens given for its security, even when created by the state laws." 21 Wall. 580.

By the Revised Statutes of Illinois of 1874, c. 12, § 1, every sailing vessel, steamboat or other water craft of above five tons burthen, used or intended to be used in navigating the waters of the State, or used in trade and commerce between ports and places within the State, or having her home port in the State, "shall be subject to a lien thereon" for all debts contracted by her owner or master on account of supplies and provisions furnished for her use, or of work done or services rendered on board of her "by any seaman, master or other employé thereof," or "of work done or materials furnished by mechanics, tradesmen or others, in or about the building, repairing, fitting, furnishing or equipping such craft," and also for sums due for wharfage, towage, or the like, or upon contracts of affreightment, and damages for injuries to persons or property. By §§ 3, 4, the lien may be enforced by a petition filed in a court of record in the county where the vessel is found, within five years, but cannot be enforced "as against

or to the prejudice of any other creditor, or subsequent in-
cumbrancer or *bona fide* purchaser," unless the petition is filed
within nine months after the debt accrues or becomes due.
By §§ 5–8, upon the filing of the petition, and of a bond from
the petitioner to the owner of the vessel to prosecute the suit
with effect, or, in case of failure to do so, to pay all costs and
damages caused to the owner or other persons interested in
the vessel by the wrongful suing out of the attachment, a
writ of attachment is to issue to the sheriff to seize and keep
the vessel. By §§ 10, 11, notice is to be given to the owners
in person, and by publication to all other persons interested,
and they may intervene to protect their interests. By §§
15–17, the vessel may be delivered up to the owner, or to any
other person interested, upon his giving bond, or making a
deposit of money. By § 19, the owner and other claimants
are to file answers. By §§ 21–27, upon judgment for the
petitioner, the vessel, if remaining in custody, is to be sold by
the sheriff; and the proceeds (deducting certain costs) are to
be applied, first, to the wages due to seamen, including the
master, for certain periods, and then to all other claims, filed
before the distribution, on which judgment has been rendered
in favor of the claimant, and to any balance due to seamen;
and any remnant is to be applied, first, to all other liens en-
forceable under the statute before distribution; second, to all
mortgages or other incumbrances of the vessel by the owner,
"in proportion to the interest they cover and priority;" third,
to judgments at law or decrees in chancery against the owner;
and any surplus to the owner.

It thus appears that, for all supplies or provisions furnished
for the use of a vessel, or for work done and materials fur-
nished in repairing her, in her home port, the statute gives a
lien upon the vessel, to be enforced by proceedings *in rem*,
analogous to such proceedings in admiralty.

In the present case, the District Court has found and ad-
judged that the sums claimed by the appellants for supplies,
repairs and services were due to them; and the Circuit Court
of Appeals has stated in its certificate that for these supplies,
repairs and services there was a lien upon the vessel under the

laws of the State of Illinois; and has certified to this court the single question " whether a claim arising upon a vessel mortgage is to be preferred to the claim for supplies and necessaries furnished to a vessel in its home port in the State of Illinois subsequently to the date of the recording of the mortgage."

It must be assumed, therefore, for the purpose of deciding this question, that all the claims of the appellants for supplies and repairs were contracted under such circumstances, that a lien upon the vessel for their payment existed under the statute of Illinois, and should be enforced in admiralty by the courts of the United States against the proceeds of the vessel, unless the mortgagees are entitled to priority in the distribution.

An ordinary mortgage of a vessel, whether made to secure the purchase money upon the sale thereof, or to raise money for general purposes, is not a maritime contract. A court of admiralty, therefore, has no jurisdiction of a libel to foreclose it, or to assert either title or right of possession under it. *The John Jay*, 17 How. 399; *The Eclipse*, 135 U. S. 599, 608. But it has jurisdiction, after a vessel has been sold by its order, and the proceeds have been paid into the registry, to pass upon the claim of the mortgagee, as of any other person, to the fund, and to determine the priority of the various claims, upon petitions such as were filed by the mortgagees and the material-men in this case. *The Globe*, 3 How. 568, 573; *The Angelique*, 19 How. 239; *The Lottawanna*, 21 Wall. 558, 582, 583; Rule 43 in Admiralty.

The appellees rely on section 4192 of the Revised Statutes of the United States, which substantially reënacts the act of July 29, 1850, c. 27, § 1, (9 Stat. 440,) and is as follows: "No bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel, of the United States shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof; unless such bill of sale, mortgage, hypothecation or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled. The lien by bottomry on any vessel, created during her voyage, by a loan of money or

materials, necessary to repair or enable her to prosecute a voyage, shall not, however, lose its priority, or be in any way affected by the provisions of this section."

The appellees contend that no lien created by the legislature of a State can override a prior mortgage recorded under this act of Congress.

But that enactment is a mere registry act, intended to prevent mortgages and other conveyances of vessels from having any effect (which they might have had before) against persons other than the grantor or mortgagor, and those claiming under him, or having actual notice thereof, unless recorded as therein provided. *White's Bank* v. *Smith*, 7 Wall. 646; *Aldrich* v. *Ætna Co.*, 8 Wall. 491. It manifests no intention to confer upon the mortgagee any new right, or to make the mortgage a maritime contract, or the lien created thereby a maritime lien, or in any way to interfere with maritime contracts or liens, or with the jurisdiction and procedure in admiralty. The only mention of any other lien on the vessel is of a bottomry bond, in the latter part of the section, originally inserted in the form of a proviso, and with the obvious purpose of precluding the possibility of construing such a bond to be an hypothecation, within the meaning of the previous clause, and therefore required to be recorded. And, as was well observed in *The William T. Graves*, 14 Blatchford, 189, 195, by Judge Johnson: " If this proviso be construed to mean that such a lien only is out of the purview of the statute, and that all other liens are postponed to that of a mortgagee, then the claims of salvors, and all those having other strictly maritime liens, would be thus postponed, to the subversion of the whole principle upon which efficacy is given to such claims, and the overthrow of the best settled and most salutary principles of the maritime law. Indeed, any principle, upon which this statute can be expounded to give such a priority to a recorded mortgage, would also extend to bills of sale and other conveyances recorded under the same law, and thus practically overthrow the whole scheme of maritime law upon the subject of maritime liens."

In *The Lottawanna*, the mortgage was preferred to the

·claim of the material-men in the home.port, only because the
latter had not recorded their lien as required by the law of
the State to make it valid; and it was clearly implied in the
opinion of the court, delivered by Mr. Justice Bradley/ as well
as distinctly asserted in the dissenting opinion of Mr. Justice
Clifford, that their lien, if valid, would take precedence of the
mortgage. 21 Wall. 578, 579, 582, 608. And, as already
stated at the outset of this opinion, the same rule was laid
down in the opinion of Mr. Justice Curtis in *The Kiersage*, 2
Curtis C. C. 421, approved by this court in *The Yankee-Blade*,
·19 How. 82.

The appellees rely on a line of cases in the courts of the
United States held in Illinois, beginning with a decision of
Judge Drummond in 1869, and upon similar cases in the
Supreme Court of the State, as establishing, as a rule of
property, that a. mortgage takes precedence of a lien for·
supplies afterwards furnished to a vessel in her home port
under the statute of Illinois. *The Grace Greenwood*, (1869)
2 Bissell, 131; *The Skylark*, (1870) 2 Bissell, 251; *The Kate
Hinchman*, (1875) 6 Bissell, 367, and (1876) 7 Bissell, 238; *The
Great West No. 2* v. *Oberndorf*, (1870) 57 Illinois, 168; *The
Hilton* v. *Miller*, (1871) 62 Illinois, 230.

· But the question in controversy depends upon principles of
general jurisprudence, and upon the true construction of an
act of Congress, and arises in the courts of the United States
exercising the admiralty and maritime jurisdiction exclusively
vested in them by the Constitution. Upon such a question,
neither the decisions of the highest court of a State, nor those
of the Circuit and District Courts of the United States, can
relieve this court from the duty of exercising its own judg-
ment. · *Liverpool Steam Co.* v. *Phenix Ins. Co.*, 129 U. S.
397, 443; *Andrews* v. *Hovey*, 124 U. S. 694, 717.

Moreover, the rule preferring the lien for repairs or supplies
in a home port to a prior mortgage was recognized, even in the
Seventh Circuit, by Judge Dyer in the District Court of the
United States for the Eastern District of Wisconsin in 1874, in
*The J. A. Travis*, 7 Chicago Legal News, 275; and it appears
to prevail in every other judicial circuit of the United States.

It has been upheld in the First Circuit, by Mr. Justice Curtis in *The Kiersage*, (1855) 2 Curtis C. C. 421, already cited, and by Judge Lowell in *The Island City*, (1869) 1 Lowell, 375, 379; in the Second Circuit, by Judge Wallace, and by Judge Johnson on appeal, in *The William T. Graves*, (1876) 8 Benedict 568, and (1877) 14 Blatchford, 189; in the Third Circuit, by Judge McCandless, and by Mr. Justice Grier on appeal, in *The Collier*, (1861) 2 Pittsburgh Rep. 304, 318, 320, and by Judge Acheson in *The Venture*, (1885) 26 Fed. Rep. 285; and in the Fourth Circuit, by Judge Hughes in *The Raleigh*, (1876) 2 Hughes, 44, and by Judge Seymour in *Clyde* v. *Steam Transportation Co.*, (1888) 36 Fed. Rep. 501. In *The Marcelia Ann*, (1887) 34 Fed. Rep. 142, Judge Bond gave priority to the mortgage, because the statute of Maryland expressly so provided.

In the Fifth Circuit, Mr. Justice Woods, then Circuit Judge, while admitting that the lien of a mortgage duly recorded was inferior to all strictly maritime liens, yet held that it was superior to any subsequent lien for supplies in the home port, given by the legislation of a State. *The John T. Moore*, (1877) 3 Woods, 61; *The Bradish Johnson*, (1878) 3 Woods, 582. His ruling was followed by Judge Hill, who had previously decided otherwise in *The Emma*, (1876) 3 Central Law Journal, 285; and, with much doubt of its soundness, by Judge Pardee. *The Josephine Spangler*, (1881) 9 Fed. Rep. 773, and 11 Fed. Rep. 440; *The De Smet*, (1881) 10 Fed. Rep. 483. But in a very recent case, Mr. Justice Lamar, upon full consideration, and with the concurrence of Judge Pardee, overruled those decisions in a clear and convincing opinion. *The Madrid*, (1889) 40 Fed. Rep. 677.

In the Sixth Circuit, Judge Sherman, sitting in bankruptcy, held that a mortgage must be preferred to a subsequent lien for supplies under a state statute. *Scott's Case*, (1869) 1 Abbott, (U. S.) 336. But the opposite rule has since been recognized as clearly established in admiralty in that circuit by decisions of Judge Withey in *The St. Joseph*, (1869) Brown Adm. 202, and *The Alice Getty*, (1877) 2 Flippin, 18; of Judge Hammond in *The Illinois*, (1879) 2 Flippin, 383, 433; of Mr.

Justice Brown, then District Judge, in *The City of Tawas*, (1880) 3 Fed. Rep. 170; of Judge Swing in *The Guiding Star*, (1881) 9 Fed. Rep. 521 and of Mr. Justice Matthews and Judge Baxter in the same case on appeal, (1883) 18 Fed. Rep. 263, 269.

The decisions in the Eighth Circuit, by Judge Thayer in *The Wyoming*, (1888) 35 Fed. Rep. 548; and in the Ninth Circuit, by Judge Hoffman in *The Harrison*, (1870) 1 Sawyer, 353, and *The Hiawatha*, (1878) 5 Sawyer, 160, and by Judge Deady in *The Canada*, (1881) 7 Sawyer, 173, are to the same effect.

According to the great preponderance of American authority, therefore, as well as upon settled principles, the lien created by the statute of a State, for repairs or supplies furnished to a vessel in her home port, has the like precedence over a prior mortgage, that is accorded to a lien for repairs or supplies in a foreign port under the general maritime law, as recognized and adopted in the United States. Each rests upon the furnishing of supplies to the ship, on the credit of the ship herself, to preserve her existence and secure her usefulness, for the benefit of all having any title or interest in her. Each creates a. *jus in re*, a right of property in the vessel, existing independently of possession, and arising as soon as the contract is made, and before the institution of judicial proceedings to enforce it. The contract in each case is maritime, and the lien which the law gives to secure it is maritime in its nature, and is enforced in admiralty by reason of its maritime nature only. The mortgage, on the other hand, is not a maritime contract, and constitutes no maritime lien, and the mortgagee can only share in the proceeds in the registry after all maritime liens have been satisfied.

It would seem to follow that any priority given by the statute of a State, or by decisions at common law or in equity, is immaterial; and that the admiralty courts of the United States, enforcing the lien because it is maritime in its nature, arising upon a maritime contract, must give it the rank to which it is entitled by the principles of the maritime and admiralty law.

As was forcibly said by Mr. Justice Matthews, in *The Guiding Star*, above cited, "In enforcing the statutory lien in maritime causes, admiralty courts do not adopt the statute itself, or the construction placed upon it by courts of common law or of equity, when they apply it. Everything required by the statute, as a condition on which the lien arises and vests, must, of course, be regarded by courts of admiralty; for they can only act in enforcing a lien when the statute has, according to its terms, conferred it; but beyond that the statute, as such, does not furnish the rule for governing the decision of the cause in admiralty, as between conflicting claims and liens. The maritime law treats the lien, because conferred upon a maritime contract by the statute, as if it had been conferred by itself, and consequently upon the same footing as all maritime liens; the order of payment between them being determinable upon its own principles." 18 Fed. Rep. 268.

It is unnecessary, however, in this case, to dwell upon that consideration, inasmuch as the lien in question is given precedence over mortgages, by the express terms of the statute of Illinois, as well as by the principles of the maritime law and the practice in admiralty.

The decisions in the Privy Council of England in *The Two Ellens*, L. R. 4 P. C. 161, and *The Rio Tinto*, 9 App. Cas. 356, cited by the appellees, in which the claims of prior mortgagees were preferred to claims of material-men in the home port, cannot affect our conclusion. Those decisions proceeded upon the ground that the material-men had no *jus in re*, because there was, by the law of England, no maritime lien for supplies, and because the acts of Parliament were construed as having given no lien for them until the arrest of the ship by admiralty process. The essential difference, in its very nature, between the right of material-men in a court of admiralty, under the law and statutes of England as judicially declared and expounded, and their right, by virtue of a local statute giving a maritime lien and a *jus in re*, as recognized in our own jurisprudence, is yet more clearly brought out in a later case, in which the Court of Appeal and the House of

Lords held that, even for supplies furnished in an English port to a foreign vessel, there was no lien, but a mere right to seize her upon process in admiralty. *The Heinrich Bjorn,* 10 P. D. 44, and 11 App. Cas. 270.

No question as to the lien of the master, or as to the comparative rank of various maritime liens *inter sese,* is presented by this case, in which the only question certified by the Circuit Court of Appeals, or within our jurisdiction to consider, as the case stands, is whether a claim arising under a mortgage of the vessel is to be preferred to the claim for supplies and necessaries furnished in her home port in the State of Illinois since the mortgage was recorded. This question must, for the reasons above stated, be

*Answered in the negative.*