## THE NEBRASKA.

### HOFFMAN v. THE NEBRASKA.

(District Court, N. D. Illinois. April 30, 1894.)

1. MARITIME LIENS—REPAIRS AND SUPPLIES—STATE STATUTES.

   Where an Illinois vessel is taken to a Wisconsin port to be altered and refitted, there being no necessity for doing the work at that particular port, no maritime lien arises therefor, since such liens are founded on necessity; but the contractor has a lien under the Wisconsin statute, which gives liens to the builders and repairers of water craft.

2. SAME—WAIVER—MORTGAGE.

   A lien for repairs created by state law is not lost by taking a note and mortgage on the vessel, where the note expressly states that it is not given or accepted in lieu or as a waiver of the lien.

3. SAME—PRIORITIES.

   Liens for repairs and for supplies, one created by the statute of the home port, and the other by that of another state, are entitled to equal rank.

4. SAME—SUPPLIES FURNISHED TO MARSHAL.

   A lien for fuel furnished to a steamboat while in the custody of the marshal should be allowed only in case the net earnings of the boat add to the funds in his hands for distribution, and only to the extent of his proportionate share in such distribution.

Libel by Frank Hoffman against the steam propeller Nebraska.

W. H. Condon and George E. Cramer, for libelant.

GROSSCUP, District Judge. The propeller Nebraska has been sold by the action of this court, and the money is now waiting in court for distribution. There is no claim for seamen's wages, unless it be that of the master, and the fund is to be distributed among the different parties who are otherwise entitled to liens thereon. Unfortunately, it is insufficient to pay all the claimants in full; hence the contest respecting the rank and dignity of the claims. The evidence shows that in view of the World's Fair, and the probability of a large passenger traffic between Chicago and Jackson Park, the owner of the steamer, one Cummings, then residing in Chicago, took her to Milwaukee, and put her in the dry docks of the Milwaukee Dry-Dock Company, under a contract with that company to refit her, in such a way as would make her temporarily adapted to the carriage of passengers. The cost of the refitting amounted to upwards of $14,000, which alone shows that it must have been very extensive and thorough. It consisted of the taking out of her old engines, and their replacement, and such readjustment and reconstruction of the decks as would adapt them to passenger traffic. The statutes of Wisconsin, like those of Illinois, provide that the builder or repairer of water craft shall have, under certain conditions, liens for the material furnished and services rendered thereon, and I think the understanding and dealings between the owner and the dry-dock company were such as, against the owner, would give the dry-dock company a lien under that statute. Subsequently, notes for the amount owing to the company were executed by the owner, with a mortgage upon the vessel securing them, which was duly filed in

the proper register; but these notes on their face provide that they are not given or accepted in lieu, or as a waiver, of the lien. There can be no question that, as between the owner and the dry-dock company, this latter transaction would not defeat the company's lien. After being refitted, the vessel navigated the water of the lakes, and obtained credit for supplies, the claims for which are now before the court for adjudication.

The principal and most important question relates to the character of the dry-dock company's lien. Maritime liens proper are the creation of the law to make navigation possible. They rose in a day when the high seas were the pathway for vessels, and when the nations in whose ports the vessels anchored were much more strangers to each other than they are to-day. The craft of a nation in a foreign port had no credit, except itself, upon which to obtain the repairs or supplies that were necessary to take it home. The necessity of maintaining that credit inviolate caused the courts of the home port to enforce the pledge of the vessel, even to the point of discrimination against the other claimants, except salvage and seamen. It was the only method by which vessels away from home could obtain wings to fly the seas. On this necessity grew up the doctrine of maritime liens proper. The considerations of necessity upon which the lien is based do not exist in favor of the claimants of the dry-dock company. The refitting was not made to give the steamer wings or legs with which to reach her home port. There is no element of stress or necessity in the repairs it provided. The owner could have had the repairs made at any other port as well as at Milwaukee, and he chose that port, not under the stress of an emergency, or to enable his vessel to get home, but simply because, for some reason, it suited his purpose better to have the repairs made there than elsewhere. No reason has been shown—no reason can be thought of—why the old maritime lien, brought into existence for an emergency, should be applied to this case. I am of the opinion, however, that the Milwaukee Dry-Dock Company had, under the statutes of Wisconsin, a lien upon the vessel for the value of such repairs, and that this lien was not waived or set aside by the subsequent transactions between the parties. It is evident that, as between themselves, it was not waived, for every precaution was taken to prevent such inference. The notes and mortgages, subsequently taken, expressly incorporated the intention of the parties that the lien should continue to subsist, and the fact of the lien itself, and of the intentions of the parties respectively thereto, have always been open to the inspection of those asked for supplies, upon the proper records of the port. This lien, however, under the doctrine of the Rumbell Case, 148 U. S. 1, 13 Sup. Ct. 498, comes from the same parentage as the lien of the claimants in the home port, namely, the statutes of the respective states, and is therefore, in the absence of any maritime reason for preferment or subordination, of equal rank therewith. I see no reason in this case why the claimants of the home port or of the Milwaukee Dry-Dock Company should outrank each other. They both contributed to the money-earning capacity of the craft. They

both were necessary to put, and keep, the vessel afloat, and neither would have existence as liens except for the legislation of the respective states. In the distribution, therefore, they will be regarded as of equal rank.

I am not prepared to change, ex post facto, the rule that has formerly governed the courts of this district in the recognition of liens. All supplies that have been furnished from the home port within the last two seasons will be regarded as of equal rank. Neither will I, in its application to this case, change the rule respecting the rank of home and foreign liens. I have, however, submitted these two matters to the consideration of Judges Seaman, Jenkins, and Bunn, within whose jurisdiction the ports of the lake lie, and will make some announcement thereon within a short period.

I can see no reason why an exception should be made in favor of the master in this case, and his claim for services will therefore be disallowed. The claim of the fuel company for fuel, supplied while the boat was in the custody of the marshal, will be allowed only in case the net earnings of the boat added something to the fund now in his hands for distribution, and only to the extent of his proportionate share in such distribution.

The question of how far separate libels were required to properly protect the interests of claimants whose claims were in the hands of one proctor will be submitted to the master for a finding, with instructions to the master that it is the duty of the party representing many claims to so reasonably consolidate them as will fully protect the interest of each claim. Under the foregoing directions the cause will be referred to the master for such further proceedings as are necessary to determine the pro rata amount of each claimant.