## THE LIDA FOWLER.

(District Court, E. D. Pennsylvania. February 7, 1902.)

### No. 41.

1. MARITIME LIENS—CREATION BY STATE STATUTE—ENFORCEMENT IN COURT OF ADMIRALTY.

The provisions of Act Pa. March 24, 1851 (P. L. 230), requiring vessels to take pilots when arriving at or leaving the port of Philadelphia, subjecting them to penalties for a failure to do so, to be recovered for the benefit of "the Society for the Relief of Distressed and Decayed Pilots, Their Widows and Children," and making all sums due for pilotage and the penalties so imposed a lien upon the vessel chargeable therewith, relate to a subject which is maritime in its nature, and therefore the liens thereby created are valid, and may be enforced in the admiralty courts of the United States, as authorized by the act.[1]

2. ADMIRALTY JURISDICTION—SUIT FOR STATUTORY PENALTY—ENFORCEMENT OF MARITIME LIEN.

Rev. St. § 563, cl. 8, which confers upon the district courts of the United States jurisdiction "of all civil causes of admiralty and maritime jurisdiction," gives such courts jurisdiction of a suit to enforce a maritime lien created by a state statute for pilotage fees, or for a penalty imposed by such statute for the failure to take a pilot as therein required.

In Admiralty. Suit in rem to enforce a lien for a statutory penalty.

Howard M. Long, for libelant.

John F. Lewis and Horace L. Cheyney, for respondent.

J. B. McPHERSON, District Judge. The facts in this case, which are undisputed, may be thus stated, substantially in the words of libelant's counsel:

This is a proceeding in rem by the Society for the Relief of Distressed and Decayed Pilots, Their Widows and Children, incorporated under the Pennsylvania statute of September 29, 1789, against

---

[1] Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.

the schooner Lida Fowler, for the sum of $48, with interest, a sum equal to the outward pilotage of the schooner from the port of Philadelphia. On or about March 12, 1901, the Lida Fowler, a registered American vessel of more than 100 tons burden, drawing 12 feet or more of water, engaged in general trading, not solely coal laden, nor engaged in the coal trade, and not licensed as a coasting vessel, was in the port of Philadelphia, about to sail to Central America or the West Indies, and back to the United States. Under the Pennsylvania statute of March 24, 1851 (P. L. 229), she was bound to take a duly licensed pilot of the port; but, notwithstanding that duty, she was towed away without having made an effort to obtain such a pilot, thus neglecting or refusing the statutory duty.

On March 12th, and for a long time prior thereto, the licensed pilots of the port of Philadelphia maintained an office at 319 Walnut street, in this city, for the purpose of supplying pilots to all vessels which under the law were bound to take a pilot; and this fact the captain of the Lida Fowler knew. It is an established custom of the port that the captains or agents of all vessels outward bound shall make application for pilots at that office. On the day the schooner sailed, and for more than 24 hours before and after that time, there were several licensed pilots in attendance at the office, any one of whom could have been employed to take her to sea; but her master made no effort to engage their services, and left the port without a pilot on board. The libelant, being entitled in such case under the act of 1851 to receive a sum equal to the pilotage fee (Collins v. Society, 73 Pa. 194), demanded payment from the agents of the schooner, and, upon their refusal, attached the vessel.

Sections 5 and 6 of the act of March 24, 1851 (P. L. 230), are as follows:

"Sec. 5. Every vessel arriving from or bound to any foreign port or place, and every other vessel of the burthen of one hundred tons or upwards, sailing from or bound to any port not within the river Delaware (except licensed coasting vessels sailing from this port), shall be obliged to take a pilot; and it shall be the duty of the master of every such vessel, within thirty-six hours next after his arrival at said port of Philadelphia, to make a report to the master warden of the name of such vessel, her draught of water and the name of the pilot who shall have conducted her to this port, and when any such vessel shall be outward bound, and not duly licensed to coast, the master of such vessel, and the pilot who is to conduct her to the Capes, and the draught of water at that time; and it shall be the duty of the wardens to enter every such vessel (reported as aforesaid) in a book to be kept by them for that purpose, and if the master of any such vessel shall neglect or refuse to make such report he shall forfeit and pay the sum of ten dollars, and no more. And if the master of any such vessel, being licensed as a coasting vessel, and of the burthen of one hundred tons, or more, shall refuse or neglect to take a pilot, the master, or owner or consignee of such vessel shall forfeit and pay the sum equal to half pilotage of such vessel; and if such vessel be not licensed as aforesaid, then and in such case, the master, owner or consignee thereof, shall forfeit and pay the full pilotage thereof: Provided, always, that wherever it shall appear to the wardens, that in the case of an inward-bound vessel, should a pilot not offer before such vessel reached the Brandywine lighthouse, bearing east, or in case of an outward-bound vessel, that a pilot could not be obtained for twenty-four hours after such vessel was ready to depart, the penalty aforesaid for not having a pilot shall not be incurred.

"Sec. 6. All sums due for pilotage, half-pilotage, and all other claims and

penalties in the nature or in lieu thereof, shall, as they accrue, become and remain a lien upon the vessel chargeable therewith, her tackle, apparel and furniture, until they are paid; and for the recovery thereof, in addition to the remedies now provided (and which shall remain as heretofore), such process and proceedings shall issue and be had in the court of common pleas of Philadelphia county, or in any court possessing admiralty jurisdiction, as are usually had in courts of admiralty for the recovery of seamen's wages. And all half-pilotage forfeitures and penalties in the nature thereof, accruing by virtue of this act, and all other debts, claims and demands, to which 'The Society for the Relief of Distressed and Decayed Pilots, Their Widows and Children,' are legally or equitably entitled to. under any law whatever, shall be recovered in the name and for the use of the said society, to whom, or to whose agent, duly constituted, the same shall be paid: Provided, that in all suits and proceedings, to which 'The Society for the Relief of Distressed and Decayed Pilots, Their Widows and Children,' shall be a party, no person shall be incompetent to testify as a witness, because of his being a member thereof."

The defenses set up by the schooner are thus stated in the brief of its counsel:

"(1) That the provision of the act of 1851, providing that the amount of the penalty for the failure to take a pilot should be a lien upon the vessel, is invalid, because the legislature of this state lacked authority to provide that the penalty should be a maritime lien upon a vessel.

"(2) That this court has no jurisdiction of this action in rem, because the provision of the Pennsylvania act for a lien for the amount of the penalty is absolutely invalid.

"(3) That this court has no jurisdiction of an action to recover a penalty provided for by the laws of the state of Pennsylvania."

The first and second grounds of defense are practically one, and neither, I think, is well taken. The supreme court of the United States has distinctly decided that, where the subject of state legislation is maritime in its character, the legislature may give a lien upon the vessel, and the enforcement of such lien may be committed to the courts of admiralty. It is enough to quote the following paragraphs from The Corsair, 145 U. S. 347, 12 Sup. Ct. 952, 36 L. Ed. 731, and The J. E. Rumbell, 148 U. S. 11, 12, 13 Sup. Ct. 500, 37 L. Ed. 347:

The Corsair: "A maritime lien is said by writers upon maritime law to be the foundation of every proceeding in rem in the admiralty. In much the larger class of cases, the lien is given by the general admiralty law; but in other instances. such. for example, as insurance, pilotage, wharfage, and materials furnished in the home port of the vessel, the lien is given, if at all, by the local law. As we are to look, then, to the local law in this instance for the right to take cognizance of this class of cases, we are bound to inquire whether the local law gives a lien upon the offending thing. If it merely gives a right of action in personam for a cause of action of a maritime nature, the district court may administer the law by proceedings in personam, as was done with a claim for half pilotage dues under the law of New York, in the case of Ex parte McNiel, 13 Wall. 236; but, unless a lien be given by the local law, there is no lien to enforce by proceedings in rem in the court of admiralty."

The J. E. Rumbell: "In the admiralty and maritime law of the United States, as declared and established by the decisions of this court, the following propositions are no longer doubtful:

"(1) For necessary repairs or supplies furnished to a vessel in a foreign port, a lien is given by the general maritime law, following the civil law, and may be enforced in admiralty.

"(2) For repairs or supplies in the home port of the vessel, no lien exists, or can be enforced in admiralty, under the general law, independently of local statute.

"(3) Wherever the statute of a state gives a lien, to be enforced by process in rem against the vessel, for repairs or supplies in her home port, this lien, being similar to the lien arising in a foreign port under the general law, is in the nature of a maritime lien, and therefore may be enforced in admiralty in the courts of the United States.

"(4) This lien, in the nature of a maritime lien, and to be enforced by process in the nature of admiralty process, is within the exclusive jurisdiction of the courts of the United States, sitting in admiralty.

"The fundamental reasons on which these propositions rest may be summed up thus: The admiralty and maritime jurisdiction is conferred on the courts of the United States by the constitution, and cannot be enlarged or restricted by the legislation of a state. No state legislation, therefore, can bring within the admiralty jurisdiction of the national courts a subject not maritime in its nature. But when a right, maritime in its nature, and to be enforced by process in the nature of admiralty process, has been given by the statute of a state, the admiralty courts of the United States have jurisdiction, and exclusive jurisdiction, to enforce that right according to their own rules of procedure."

See, also, note to The Electron, 21 C. C. A. 21.

The third defense is supported by the argument that section 563, cl. 3, of the Revised Statutes confers jurisdiction upon the district court of suits for "penalties and forfeitures incurred under any law of the United States," and gives no authority to entertain a suit for a penalty imposed by a state statute. This argument overlooks the grant of jurisdiction, in clause 8, "of all civil causes of admiralty and maritime jurisdiction," in which such an action as the pending libel seems to me to be certainly included: The Electron, 21 C. C. A. 30. I can see no difference in principle between The Glendale v. Evich, 26 C. C. A. 500, 81 Fed. 633, in which the validity of a lien given by a state statute for a maritime tort was sustained, and the present action, even if it be regarded as a suit to recover a penalty. Damages for a tort are intended to be compensation for a wrong; and a penalty imposed for the violation of a duty, while it may sometimes operate to punish the wrongdoer, as well as to compensate the person injured, is essentially of the same character. In the present case, the sum which the schooner is required to pay for neglect or refusal to employ a pilot does not go beyond compensation; for the amount is no more than the charge for pilotage, and the money is to be applied to the benefit of the associated pilots, their widows and children. I see no difficulty whatever, under the authorities above referred to, in holding that the act of 1851 is valid, so far as it gives authority to the courts of admiralty to enforce the lien against the vessel. The subject is maritime, and this is the test to be applied. Whether the suit is to recover pilotage for services rendered or offered, or for a penalty because the vessel refused and neglected to employ a pilot, seems to me to be immaterial. The essence of the matter is the same in each of these three cases.

As part of the history of the statute, I may add that the court of common pleas of Philadelphia county has decided that the act of 1851 is invalid, so far as it attempts to give jurisdiction to the courts of the state: Rutherford v. The Ornen, 2 Wkly. Notes Cas. 122.

A decree may be entered in favor of the libelant, with costs.