Bernard Tompkins, of New York City, for claimants.

## MURRAY v. THE METEOR.

### No. 18591.

District Court, E. D. New York.

July 12, 1948.

BYERS, District Judge.

This cause was heard pursuant to an order made in response to a motion to vacate the attachment of the S. S. Meteor, and to dismiss the libel "on the ground that the subject-matter is outside the maritime and admiralty jurisdiction of this Court". The order inter alia directed that the cause be placed on the day calendar of the admiralty term for the purpose of presenting the jurisdictional question; "and if a trial is necessary on the other issues, a trial date be fixed therefor".

The controversy is whether the libellant is entitled to a lien for wharfage of the Meteor for the period between July 1, 1947, and October 7, 1947, under the circumstances brought to light at the hearing.

The amended libel alleges that the ship is a domestic vessel, owned by a citizen of the United States, and that on June 18, 1947, the owner agreed with the libellant that the latter should furnish wharfage for the ship at the rate of $250.00 per month; that such wharfage was furnished to and including October 7, 1947.

Seemingly wharfage at the agreed rate was paid until August 1, 1947, but not thereafter. The libellant has filed a notice of lien in the Clerk's Office of the County of New York pursuant to Article 4 of the Lien Law of the State of New York, Consol.Laws, c. 33, covering the period from August 1, 1947, to October 7, 1947, and on the following day the original libel was filed, and on October 9, 1947, the Marshal duly attached the vessel.

It is alleged that the fair, reasonable and agreed value of the wharfage is $808.73.

The answer denies that the libellant is the lessee of the property containing the wharf and is entitled to collect wharfage; that the Meteor is within the jurisdiction of this Court; that she is a domestic vessel as alleged, but admits that "the owners of the Meteor are citizens of the United States of America".

Further, all material allegations of the libel are denied, save non-payment of the amount claimed.

The affirmative defense is that the libellant misrepresented his status as lessee of the pier at which wharfage was had; that it was in fact in Bayonne, New Jersey, and not in New York; and that access to the Meteor was agreed to be possible by special arrangement with the owner of an adjoining pier, which in fact was not the case, whereby cost for transportation was incurred by the former and present owners of the Meteor.

The hearing developed the following facts, which are hereby found:

1. The libellant was, at the times material to this controversy, the permittee of the pier at Shooters Island, New York Bay, at which the Meteor was furnished wharfage, and, as such, was legally entitled to collect the wharfage described in the amended libel.

2. So much of the said pier as was occupied at the said times by the Meteor for the purpose of wharfage lay entirely within the boundary of the City and State of New York, and within the jurisdiction of this Court.

3. This Court has jurisdiction of this cause, and over the vessel Meteor.

4. At all times material hereto, the Meteor was not an instrument of commerce, and had been withdraw therefrom.

Comment:

This Finding is based upon the undisputed fact that the Meteor had been purchased from the United States while she was lying idle in Norfolk, Virginia, and not in commission. She was towed to New York, and while berthed at pier 69, East River, arrangements were made by the attorney for the then owner, with libellant, for the wharfage here involved, and for towing to libellant's said pier at Shooters Island. That attorney appears of record in this case for the present claimants.

It is the failure to perform that contract for wharfage which gives rise to the present cause.

It likewise appears that there is no current certificate of enrollment, and according to the United States Treasury records the Meteor was formerly owned by the United States Maritime Commission.

Claimants' Exhibit D is a Bill of Sale dated March 21, 1947, by the Commission to Abe Krause of 50 West 72nd Street, New York City, Manhattan.

He was the claimant appearing specially when the original libel was filed. Two other persons are named as such in the Answer to the amended libel.

The physical condition of the Meteor (formerly the Chester W. Chapin) on April 1, 1947, was shown to be as follows: The propelling machinery was in no condition to operate; the pumps were disassembled; her auxiliary engines were inoperable, as were her lighting facilities. She was a dead ship in all respects, and that condition has not changed down to the filing of the libel.

She was not placed at the libellant's wharf in order to enable her to continue in navigation, because she could not continue that which she had not begun at any time since her removal from Norfolk whence she was towed to New York. In order to become an instrument of navigation, extensive repairs will first have to be made, and proper documentation effected.

5. No maritime lien arose for wharfage furnished to the Meteor by this libellant. (See The Poznan, 2 Cir., 9 F.2d 838, at page 842 et seq.)

6. The Lien Law of the State of New York, Section 80, created a lien for wharfage of the Meteor, and the notice thereof was duly filed as required by Section 82.

7. The lien so created is enforceable in this cause.

Comment:

The libellant pleads this lien, and the avoidance asserted for the claimants raises the only important issue.

Reliance is had upon the language of the Act of June 5, 1920, 46 U.S.C.A. § 975:

"This chapter (The heading, § 971, is "Maritime Liens for Necessaries") shall supersede the provisions of all State statutes conferring liens on vessels, insofar as such statutes purport to create rights of action to be enforced by suits in rem in admiralty against vessels for repairs, supplies, towage, use of dry dock or marine railway, and other necessaries."

Section 971 provides that one who furnishes "repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

It will be seen that the section first above quoted is complementary to the second, and that the inquiry is as to whether Section 971 changed the law as embodied in the Act of June 23, 1910, ch. 373, § 1, 36 Stat. 604, entitled "An Act Relating to liens on vessels for repairs, supplies, or other necessaries". The textual change seems to involve the insertion of towage as the basis for a lien, and so for present purposes the statutes may be deemed to be alike.

The Supreme Court has explained that the effect of the 1910 Act is to abolish the prior distinction between the taking of supplies in the home port, and in a foreign port; the necessity for proving the giving of credit to the ship rather than her owner; and "Third, to substitute a single federal statute for the state statutes in so far as they confer liens for repairs, supplies and other necessaries". See Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, at page 11, 41 S.Ct. 1, 4, 65 L.Ed. 97.

There seems to be no reason why state and federal statutes should occupy the same space, and hence the latter superseded the former where the federal statute does not purport. But that does not mean that, to recognize the existence of a lien arising from the performance of a service to a ship, and such a lien is the creature of state law, the latter was annulled or rendered void by Act of Congress. I should suppose that the full reach of congressional power would extend to the denial of access to federal courts for the purposes of enforcement, since Congress can scarcely in terms repeal a state statute.

That state liens would be recognized and enforced by federal courts in appropriate circumstances has been frequently decided; see, for instance, The Lottawanna, 21 Wal. 558, 579, 580, 22 L.Ed. 654; The J. E. Rumbell, 148 U.S. 1, at page 12, 13 S.Ct. 498, 37 L.Ed. 345; Beard v. Marine Lighterage Corporation, D. C., 1924, 296 F. 146.

A helpful discussion of the extent to which the admiralty courts are required to recognize and give effect to rights created by state law will be found in Just v. Chambers, 1941, 312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903.

The question was whether a cause of action sounding in tort would survive against the estate of the deceased owner of a vessel in a limitation proceeding, where under the applicable state law that result would ensue, although perhaps not in maritime law. The opinion contains the following, 312 U.S. at page 387 et seq., 61 S.Ct. at page 691: "And it is not a principle of our maritime law that a court of admiralty must invariably refuse to recognize and enforce a liability which the State has established in dealing with a maritime subject. On the contrary, there are numerous instances in which the general maritime law has been modified or supplemented by state action,

as e.g. in creating liens for repairs or supplies furnished to a vessel in her home port. The Lottawanna, 21 Wall. 558, 580, 22 L.Ed. 654; The J. E. Rumbell, 148 U.S. 1, 12, 13 S.Ct. 498, 500, 37 L.Ed. 345."

Further, "* * * the principle was maintained (in cited cases) that a State, in the exercise of its police power, may establish rules applicable on land and water within its limits, even though these rules incidentally affect maritime affairs, provided that the state action 'does not contravene any acts of Congress, nor work any prejudice to the characteristic features of the maritime law, nor interfere with its proper harmony and uniformity in its international and interstate relations.' It was decided that the state legislation encountered none of these objections."

While the foregoing was addressed to a problem concerning liability for tort, no reason suggests itself to deny its applicability to a contract relationship and the imposition of a lien arising therefrom, since there is no conflict between a state lien for wharfage furnished to a vessel as here, and the absence of a maritime lien occasioned by fact that the vessel was not an instrument of commerce at the time the wharfage was contracted for, and hence the latter could not have been deemed a temporary expedient resorted to by way of enabling her to resume the functions of a carrier in commerce which were suspended for a brief interval.

That such a state-created lien for wharfage could survive the Act of 1920, supra, and be efficacious, is consistent with the observation of the Second Circuit Court of Appeals in The Poznan, supra, 1925, 9 F.2d at page 844, where, in discussing the absence of a contract for wharfage with the master of the ship, and charges appearing on the bills rendered to the owner and not the charterer, and the filing of the libel against the ship (in custodia legis), the Court says: "But it (the Dock Company) at no time filed the notice claiming a lien against the vessel in the manner provided by sections 80 and 82 of the Lien Law of the state of New York." If that failure was so significant as to merit attention in the opinion, the reason must be because the assertion of such a lien under appropriate circumstances would have been of moment.

The Court further observes, 9 F.2d at page 845: "The question whether wharfage is a 'necessary' within the meaning of the Act of 1920 was not argued * * *. As it is not important in the view which we take of the case, we express no opinion concerning it at this time."

The subject seems equally inappropriate for present discussion, since no maritime lien is involved, for reasons heretofore stated.

The view presently held, as to the incidence and effect of the state lien asserted in this libel, is in accord with that stated in Robinson on Admiralty, at page 376: "Other necessaries are to be read ejusdem generis merely. It is not therefore correct to say that the Acts of 1910 and 1920 supersede all state statutes creating liens upon ships; the legislation does not supersede them for even all services and supplies and there is an area left in which states may set up liens enforceable as before, in rem in admiralty."

See also, for discussion of the law, Marine Lighterage Corp. v. Luckenbach S. S. Co., Inc., 139 Misc. 612, 248 N.Y.S. 71.

### Conclusions of Law

1. The exceptions of the claimants are overruled.

2. The libellant is entitled to proceed forthwith.

3. At the option of the parties, the next step will be either:

(a) To proceed before the Court to establish the amount of libellant's lien; or

(b) To settle on notice an interlocutory decree in favor of libellant with costs, containing proper provision for the appointment of a Commissioner to take testimony and fix the amount of libellant's lien and its priority.