**NORTH AMERICAN CONTINENTAL CO., Inc. v. THE EL CUIS et al.**

No. 19919.

United States District Court
E. D. New York.

Oct. 2, 1952.

Hill, Rivkins & Middleton, New York City, Joseph T. McGowan, New York City, of counsel, for libellant.

Gray & Wythe, New York City, Horace M. Gray, Edward R. Phillips, New York City, of counsel, for claimant.

## GALSTON, District Judge.

This is a motion brought by the claimant, Banco de Credito Industrial Argentino, for an order vacating an interlocutory decree entered on default, and permitting it to file a stipulation for costs and claim to the vessel, as mortgagee, and defend the libel.

It appears from the affidavit of Honorable Jorge I. Nicolini, Consul General of the Republic of Argentina at New York, that the claimant is a branch of the Treasury Department of the Government of Argentina, and that it "holds a mortgage of Two Million pesos secured upon said vessel El Cuis." It also appears that proctors were authorized on August 5, 1952, to appear and to take the necessary action to protect the claimant's interest in the vessel. However, according to the affidavit, difficulty was experienced in procuring a deposit of American dollars in this country to be used as collateral in order to secure the claimant's cost bonds, without which such claim could not be filed. As a consequence, the affidavit asserts, the funds were not secured until September 10, 1952, which was after an interlocutory decree had been entered on default on September 5. The delay in obtaining funds is attributed to the following causes:

"Owing to the death of Mrs. Peron, business was badly disrupted in Argentina for several weeks and Argentine Government departments were also greatly impeded and delayed by reason thereof.

"Because of stringent fiscal regulations in Argentina and the scarcity of United States dollars, the transfer of funds in dollars to the United States to provide such security in the suits pending against the El Cuis and those threatened, required the approval of various ministrys of the Argentine Government * * *".

■ The libellant, in opposing the motion, contends that an ordinary mortgagee is not entitled to intervene in a libel action against a vessel. It seems well established that an ordinary mortgage on a vessel is not a maritime contract, and, therefore, that a court of admiralty has no jurisdiction of a libel to foreclose it, or to assert either title or right of possession under it, The J. E. Rumbell, 148 U.S. 1, 13 S.Ct. 498, 37 L.Ed. 345; Bogart v. The S. S. John Jay, 17 How. 399, 15 L.Ed. 95. It may be observed though that there is jurisdiction in admiralty under the provisions of the Ship Mortgage Act of 1920, 46 U.S.C.A. § 911 et seq., to foreclose a "preferred mortgage". The claimant here, however, does not contend that its alleged mortgage is a preferred mortgage under that Act. Nor do the moving papers indicate that the provisions of the Act are applicable here.

■ Nevertheless, the courts have recognized the right of a mortgagee to appear as a claimant in libels filed against the vessel by third persons. For example, in Schuchardt & Gebhard v. Babbage, 19 How. 239, at page 241, 60 U.S. 239, at page 241, 15 L.Ed. 625, in affirming an order dismissing a libel filed by a mortgagee to enforce the payment of a mortgage, the Supreme Court, stated:

"The proper course for the mortgagees was to have appeared as claimants to the libels filed against the vessel, in which the questions presented in the case might have been raised and considered; or, on the sale of the vessel, and the proceeds brought into the registry, they might have applied by petition; claiming an interest in the fund: * * *."

If all that the claimant here desired was to enforce payment of its mortgage against the vessel, there would be no need to set aside the interlocutory decree. As the quoted passage from Schuchardt & Gebhard v. Babbage above indicates, the claimant could file a petition asserting an interest in the proceeds from the sale of the vessel. See Admiralty Rule 42, 28 U.S.C.A. (Claims against proceeds in registry.) However, it appears from the affidavit of Horace M. Gray, a member of the firm of

Gray & Wythe, proctors for the claimant, that the purpose in intervening is to defend against the establishment of a maritime lien against the vessel by the libellant.

The right of a mortgagee to raise defenses against a libellant seeking to enforce a maritime lien on a vessel where the owner-mortgagor has defaulted, was upheld in The Portchester, 2 Cir., 1932, 56 F.2d 579. There it was held that the mortgagee could intervene and raise the defense of laches against the libellant. In The Rupert City, D.C., 213 F. 263, the court recognized a similar right of a mortgagee to intervene and defend. It stated, 213 F. at page 266, as follows:

> "Interveners * * * claim priority of their mortgage over the various lien claimants. It is, however, well settled that a mortgage is not and cannot be made a maritime lien and that it is always subordinate to such liens. * * * It is not even a maritime contract and may not be foreclosed in an action at rem. * * *

> "It does not follow, as contended, however, that the mortgagee may not intervene and defend against the establishment of maritime liens against the vessel. These would deplete the fund upon which. he must rely, as the vessel when sold is discharged of his lien, and the mortgagee has a claim only upon the proceeds of the sale. * * * "

■ Granting that there is a right in a mortgagee to intervene and defend against a libellant asserting a lien against the mortgaged vessel, there remains, however, the question, in the case at bar, whether the mortgagee-claimant is entitled to have the interlocutory decree, entered on default, set aside so it can intervene for the purpose of setting up its claim. In order to justify the exercise of the court's discretionary right, pursuant to Admiralty Rule 28, to set aside a default decree in admiralty, there should be a substantial showing of a meritorious defense and some explanation of the reason why the default occurred. The Navemar, D.C., 17 F.Supp. 647.

As noted, the moving papers offer an explanation in respect to the reason for the delay in obtaining the required transfer of funds from Argentina. The papers also indicate that the claimant knew of the seizure of the El Cuis under process in admiralty on or before August 4, 1952, and that proctors were authorized on August 5 to appear on behalf of the claimant. However, there is no explanation given as to why no application was made to the court between August 4 and September 4, when the interlocutory decree was entered, to obtain an adjournment of the libel action to protect the claimant's interest.

The claimant's right to intervene here rests upon a claim of interest as a mortgagee. Although the affidavit of the Consul General of Argentina states that the claimant holds a mortgage upon the vessel, the terms of the mortgage are not set out. Nor is the alleged mortgage, or a copy thereof, included as part of the moving papers.

In respect to the existence of a meritorious defense, the affidavit of Horace M. Gray states:

> "Deponent has discussed the facts relating to the receipt, storage, carriage, care and discharge of the cargo of tung oil, which is the subject of the libel herein, and has the ship's logs in his possession, and from the facts so developed deponent is of the opinion that the said vessel and her claimant have a good and meritorious defense to the within action upon the grounds,. among others, that due diligence was. exercised by the owner to make said. vessel seaworthy at the commencement. of her voyage, and that said vessel. was in fact seaworthy when she left the port of Buenos Aires, Argentina,. for the port of New York with said cargo on board."

In making this affidavit, the deponent declares that he is "familiar with the facts. surrounding the seizure of the said M/V El Cuis and subsequent events relating to. said vessel at the port of New York." The issue of seaworthiness would rest upon facts existing prior to the seizure. Consequently,. the statement that the deponent "has dis--

cussed the facts relating  *  *  *  (to) the cargo of tung oil" and "is of the opinion" that there is a meritorious defense, is hardly adequate to constitute a substantial showing that a good defense exists. The "facts" which were "discussed" and upon which the deponent rests his "opinion", are not shown.

In view of the foregoing it must be concluded that the explanation of why the default occurred is not sufficiently complete, and that there is no substantial showing of the existence of a meritorious defense.

Since the claimant's mortgage would be subordinate to valid maritime liens, the right to file a petition asserting a claim against the proceeds. of the sale of the vessel would avail the claimant little unless it can defend against the establishment of such liens. The assertion of such defense is properly a part of the action to determine the validity of a libel filed to assert such liens. Consequently, so that the rights of the claimant may not be prejudiced, although leave to set aside the default must be denied on the present showing, it will be without prejudice to the claimant's presenting another application in conformity with the views set forth herein within twenty days after the order on this motion is filed.