**NORTH AMERICAN CONTINENTAL CO., Inc. v. THE EL CUIS.**

No. 19919.

United States District Court
E. D. New York.

Oct. 30, 1952.

Hill, Rivkins & Middleton, New York City, for libellant, Joseph T. McGowan, New York City, of counsel.

Gray & Wythe, New York City, for claimant, Horace M. Gray, New York City, of counsel.

BYERS, District Judge.

This is a renewed application on the part of the claimant for leave to intervene and file an answer in this proceeding; and to set aside and vacate the interlocutory decree and order of reference entered September 5, 1952, and to direct the Clerk to accept a $250 stipulation by claimant to cover costs.

The previous application was denied by Judge Galston in D.C., 107 F.Supp. 436, which discusses the status of the respective parties and the nature of the claim which is sought to be asserted if intervention be granted. The following is quoted:

"In view of the foregoing it must be concluded that the explanation of why the default occurred is not sufficiently complete, and that there is no substantial showing of the existence of a meritorious defense.

"Since the claimant's mortgage would be subordinate to valid maritime liens, the right to file a petition asserting a claim against the proceeds of the sale of the vessel would avail the claimant little unless it can defend against the establishment of such liens. The assertion of such defense is properly a part of the action to determine the validity of a libel filed to assert such liens.

Consequently, so that the rights of the claimant may not be prejudiced, although leave to set aside the default must be denied on the present showing, it will be without prejudice to the claimant's presenting another application in conformity with the views set forth herein * * *."

The deficiency thus portrayed has two aspects:

(a) The delay on the part of the claimant;

(b) The failure to portray the alleged mortgage.

As to (a), the new papers really contradict the affidavit of the Consul General of Argentina which is full of conjectures as to what might have caused procrastination in arranging for the filing of a bond, namely, the posture of affairs resulting from the death of the wife of the president of the Republic of Argentina which occurred on June 26, 1952. The assertion of disruption in the conduct of governmental functions during the month of August, 1952 is substantially dispelled by Exhibit A (of which Exhibit B is a translation) attached to the said affidavit, which seemingly is a certificate, duly authenticated, made by Jose Sartorio "National Judge of First Instance of the Special Civil and Commercial Court of the Capital of the Republic of Argentine," signed and sealed in his office in the City of Buenos Aires on August 12, 1952. . This document seems to be a petition which concludes—assuming the accuracy of the translation—thus:

"We hereby state that the General Consul of Argentina in New York or the person by him appointed, are entitled to take charge of the necessary arrangements to carry out this petition, with ample faculties in order to defend with the aoutmost (sic) efficiency the interests of Banco Industrial Argentino."

That is, governmental functions were by no means in suspense during the month of August, 1952.

If the earlier opinion is understood, the delay in making claim was not regarded as fatal to the application, or leave to renew, with a more complete showing as to the alleged mortgage, would not have been reserved to the claimant. It is required, therefore, to examine Exhibits A and B as to the deficiency (b).

The showing may be thus paraphrased:

(1) The claimant, desiring to intervene, appeared before the certifying Judge to demand the payment of 2,011,009 (?) pesos and 58 cents from Compania Argentina de Transportes Maritimos Transmar S.R.L.

(2) Among the various vessels encumbered in favor of the Bank is the ship El Cuis, apparently of Argentine registry.

(3) That the ship "was encumbered with a mortgage for the amount of 900,000 pesos, national currency."

(4) That the Bank, as creditor, has requested seizure of said ship "anchored at present at the port of New York (U. S. A.) or upon the amount of her price in case of judicial sale of same."

(5) The proposed intervenor is an institution of the Argentine Republic.

(6) The right asserted arises from the non-fulfillment on the part of the borrowing company of promises "described on Public Deeds * * * and on dispositions (sic) of" articles referred to of the Commerical Code and the Civil Code.

(7) An apparent extract from a public record concerning the mortgage, involving:

(a) The appearance on April 24, 1948 of an individual before the National Notary Public of Maritime Affairs representing a company, the name of which is Compania Argentina de Transportes Maritimos Transmar, Sociedad de Responsabilidad Limitada; and

(b) A grant by the proposed intervenor to the said company of a loan in the amount of 400,000 pesos payable in five equal installments, "encumbering the Argentinian motor vessel 'Argebra' * * * as guarantee, of said loan, with real right of first mortgage in favor of the mentioned bank.— That with the purpose of reinforcing the guarantee, the company he represents (apparently the owner of the ship) accepted in the same act, and to the effect of the same credit, to mortgage the motor boat, type

LST (Former American troop transport), which the company was to acquire in the United States and whose name is today 'El Cuis.'" That he hereby "encumbers with real right of first mortgage" in favor of the said bank the coastal motor boat El Cuis, the dimensions of which are given.

(8) Language which apparently brings the last named ship within the coverage of the loan dated September 29, 1947 "thus being considered as an integral part of same (deed of September 29, 1947), and as a reinforcement of the guarantee for the capital borrowed in the amount of 400,000 pesos."

(9) Acceptance on the part of the Bank of the mortgage created as above stated.

(10) The Chief Notary Public of Vessels Registration Section states that on August 13, 1948 there was registered in a designated record in his charge, the above-named corporation, owner of the vessel, "for encumbrance of a loan" that the said bank gave (made?) as an addition, to "said loan for 400,000 pesos * * * the amount of 900,000 pesos * * * and said addition of 500,000 pesos * * * the debtor agrees to repay to the Bank" in amounts and at times stated, with interest, "thus keeping the encumbrance for the additional loan with real right of first mortgage for the amount of 900,000 pesos * * * the coastal boat 'El Cuis,' to which the preceding title refers."

(11) Re-registration of the mortgage on October 27, 1950.

(12) Entry dated August 11, 1952, in the records of "General Maritime Prefecture. Vessels Registration Section. Division of Maritime Supply." as follows:

"Since it has been presented and by force of the power of attorney granted, testimony of which will be copied and delivered copy of same being left for the proceedings, * * * The Note authorized by the public deeds attached being violated, intimating demand of payment of 2,011,209 pesos and 58 cents national currency * * * together with the amount of 200,000 pesos which in a provisional manner are calculated to cover the interest and legal execution

expenses, is hereby issued.—Seizure of the vessels encumbered by said credit is hereby ordered, * * *."

■ The document seemingly describes a series of transactions between the corporate owner of the vessel and the Bank which would be consistent with a loan secured by mortgage covering El Cuis. Thus it would seem that there is a sufficient showing in the papers to meet the requirements prescribed in the prior decision.

Considerations of comity weigh in favor of the bank's having its day in court in this litigation, and of course nothing said herein is to be understood as offering a comment upon the merits of the claim asserted by the proposed intervenor.

It is urged for the libellant that the $250 security for costs which would have been filed with the claim had that been done prior to the default, should be deemed to be insufficient because intervention can be had only pursuant to Rule 34 of the Admiralty Rules of the United States Supreme Court, 28 U.S.C.A., under which, on the filing of the intervenor's allegations, a stipulation may be required to abide by the final decree and "to pay all such costs and expenses and damages as shall be awarded against him * * * not to exceed however in any event the agreed or appraised value of the property so claimed * * * with interest at six per cent. per annum and costs."

This is not understood to be a claim of ownership as to which the attachment can be lifted only by giving a stipulation for value.

This claimant asserts a right based upon an alleged breach of a non-maritime contract, and had that right been asserted prior to the default decree, the customary $250 bond would have been accepted.

■ In that case the delay in reaching trial and the expense incident to the taking of depositions would have been incurred, and the possibility that there might be filed other claims asserting maritime liens of higher priority than that of the libellant would necessarily have had to be reckoned with in the ordinary course of the litigation. Thus there seems to be no reason

for exacting more than the customary security since there is no attempt to show that if the libellant is finally to prevail, it cannot secure its costs and taxable disbursements out of the proceeds of the sale of the ship, if such sale shall be had.

Therefore, no reason is presented for denying so much of the prayer of the proposed intervenor as is directed to the acceptance by the Clerk of a $250 bond. The motion will be granted, reserving to the libellant the right to show, on the settlement of the order to be entered hereon, if it can, that there is presented in this cause any good reason for exacting more than the customary $250 bond.

Settle order.