Matter of G——

In DEPORTATION Proceedings

A-11292737

*Decided by Board May 6, 1959*

**Loss of citizenship—Voting in foreign political election (section 401(e), Nationality Act of 1940)—Claim of fear, where believed, sufficient to put voluntariness in issue.**

Government's burden of proving voluntariness of expatriating conduct by clear, convincing, and unequivocal evidence is not met under section 401(e) of the Nationality Act of 1940 where uncorroborated testimony of native-born United States citizen shows that he voted in Greece in 1951 under a genuine, if unfounded, fear of harm or reprisal for failure to vote.

CHARGE:

Order to Show Cause: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer than the permitted period after admission as a nonimmigrant seaman.

## BEFORE THE BOARD

**Discussion:** This case is before us on certification of the order of the special inquiry officer, dated November 5, 1958, holding that respondent is still a United States citizen and terminating the deportation proceedings. Respondent acquired United States citizenship at birth at Mobile, Alabama, on August 12, 1926. In 1929, his parents took him to Greece to live and he remained in that country until his last entry on December 17, 1957, as a seaman.

In 1948, while living on the Island of Andros in Greece, respondent's name was entered on the list for Greek naval service and about a month later he was called for such service. Respondent testified that he protested such service, but was told that if he failed to serve he would be branded a communist and also he would be punished by a court martial.

He served in the Greek Navy from April 2, 1948, to April 25, 1950, admittedly taking an oath of allegiance in June 1948. According to Greek law, a prospective inductee who failed to appear would be subject to 2 additional years' military service and criminal penalties.

317

In 1950 and twice in 1951, respondent voted in elections in his native village. Respondent testified that he feared being branded a communist if he failed to vote and also was of the impression that the homes of persons who failed to vote would be burned. On February 23, 1952, respondent applied for registration as a United States citizen.

The special inquiry officer concluded that the Government had failed to prove that respondent's entry into the Greek Navy was voluntary and, therefore, the Government had failed to discharge its burden of proof in this regard. Concerning voting, the special inquiry officer concluded that respondent's actions were involuntary for they were the result of fear that he would be branded a communist and that harm might result to his family if he failed to vote. Again, the special inquiry officer concluded that the Government had failed to discharge the burden of proving the voluntary character of respondent's acts of voting in order to support their contention of loss of citizenship. Hence, respondent was still considered to be a citizen and the deportation proceedings inappropriate.

The examining officer has appealed from this decision on the issue of expatriation under section 401(c) of the Nationality Act of 1940 by foreign army service and on the question of expatriation under section 401(e) of the Nationality Act of 1940 in connection with two acts of voting in 1951. The examining officer concedes that the act of voting in 1950 was not voluntary.

The Immigration Service contends that the burden of proof of loss of citizenship has been satisfied by the present record and that the special inquiry officer's conclusion to the contrary resulted from misconstruction of the applicable law. On the other hand, counsel has argued from known facts in this case and the applicable law as it has been enunciated by the courts, in support of the special inquiry officer's conclusion.

In *Perez* v. *Brownell*, 356 U.S. 44 (1958), the Supreme Court discussed expatriation generally. However, this case stands primarily for the principle that even though the right to United States citizenship may be relinquished or abandoned, either by expressed language or by conduct amounting to renunciation, loss of citizenship may be accomplished only voluntarily. See also *Mandoli* v. *Acheson*, 344 U.S. 133 (1952). The specific act of expatriation under consideration in the *Perez* case was that of voting in a foreign political election (section 401(e); 8 U.S.C. 801(e), 1940 ed.). On the other hand, in *Nishikawa* v. *Dulles*, 356 U.S. 129 (1958), the Supreme Court stated:

* * * the parties are agreed that when a citizenship claimant proves his birth in this country or acquisition of American citizenship in some other way, the burden is upon the Government to prove an act that shows expatriation by clear, convincing and unequivocal evidence. In *Gonzales* v. *Landon*,

318

350 U.S. 920, we held that the rule as to burden of proof in denaturalization cases applied to expatriation cases under section 401(j) of the Nationality Act of 1940. We now conclude that the same rule should govern cases under all the subsections of section 401.

Concerning the element of voluntariness, the following comments were set out in the *Nishikawa* case:

* * * Petitioner contends that voluntariness is an element of the expatriating act, and as such must be proved by the Government. * * *

Because the consequences of denationalization are so drastic petitioner's contention as to burden of proof of voluntariness should be sustained. * * * The same principle applies to expatriation cases, and its calls for placing upon the Government the burden of persuading the trier of fact by clear, convincing and unequivocal evidence that the act showing renunciation of citizenship was voluntarily performed. While one finds in the legislative history of section 401, and particularly section 401(c), recognition of the concept of voluntariness, there is no discussion of the problem of the burden of proof. * * * It is altogether consonant with this history to place upon the Government the burden of proving voluntariness. The Court has said that "rights of citizenship are not to be destroyed by an ambiguity." *Perkins* v. *Elg*, 307 U.S. 325, 337. The reference was to an ambiguity in a treaty, but the principle there stated demands also that evidentiary ambiguities are not to be resolved against the citizen. [356 U.S. 129, 133–136]

Although the Government set up a *prima facie* case in support of its allegation of loss of citizenship (foreign army service and voting in Greece), respondent has produced evidence that he had a *bona fide* fear of reprisal or punishment if he failed to perform the expatriating acts. Voluntary action presupposes the conscious exercise of a free choice in the doing of an act which will cause loss of United States citizenship, with proof of the voluntary character of the act required to be clear, convincing and unequivocal.[1]

If a penalty provision for failure to perform compulsory military service is involved, grave doubts immediately arise concerning the voluntary character of such service. Also, useless protests of United States citizenship, *etc.*, are not required to preserve the person's right to claim United States nationality (*Nishikawa* v. *Dulles*, *supra*).

Hence, the Government is required to prove by clear and convincing evidence that the conscript's military service was voluntary and, at the same time, rebut respondent's *prima facie* showing of involuntariness. See *Perri* v. *Dulles*, 206 F.2d 586 (C.A. 3, 1953); *Lehmann* v. *Acheson*, 206 F.2d 592 (C.A. 3, 1953); *Gensheimer* v. *Dulles*, 117 F. Supp. 836 (D.C. N.J., 1954); *Namba* v. *Dulles*, 134 F.

---

[1] The situation here is quite different from *Savorgnan* v. *United States*, 338 U.S. 491 (1950), and *Mackenzie* v. *Hare*, 239 U.S. 299 (1915), for having no distinct intent to give up United States citizenship, those women both *voluntarily* engaged in conduct which Congress had prescribed as the basis for loss of citizenship.

Supp. 633 (N.D. Calif., 1955); *Correia* v. *Dulles*, 133 F. Supp. 442 (D.C. R.I., 1955).

In this case, respondent lived in an outlying area of Greece. If he refused to serve in the navy as directed, he could be punished and he had no means of escape, no one to turn to for help. His decision to serve was not a free choice. The evidence clearly shows that his foreign army service was involuntary and not an act of expatriation (*Nishikawa* v. *Dulles*, *supra; Moldoveanu* v. *Dulles*, 168 F. Supp. 1 (E.D. Mich., 1958)).[2]

The crux of the expatriation by voting problem now before the Board is whether the citizen's genuine, but unfounded, fear of harm, if he failed to vote in the 2 Greek election contests in 1951, constituted duress or reduced his acts of voting to being involuntary in the legal sense. Of necessity, every allegation that a person committing an expatriating act out of fear does not *per se* constitute an excuse for such an action, for each set of circumstances must be examined individually and the validity of the averred factors determined.

According to the *Nishikawa* case (at pp. 133, 134), the Government must prove voluntariness, which in this case means that the Government must prove that respondent was completely a free agent and that his 2 acts of voting in 1951 occurred spontaneously, apart from the force of outside pressures.[3] Also, this proof must affirmatively establish the voluntary character of the acts in issue by clear and convincing evidence (*Gonzales* v. *Landon*, *supra, at p.* 920).

The Immigration Service is troubled by the fact that the sole evidence of voluntariness is responsive testimony of the alleged citizen on this point. The Service feels that the *Nishikawa* decision never intended such evidence to be sufficient to support the alleged citizen's claim of retention of United States nationality.

First of all, it must be emphasized that in *Gonzales* v. *Landon*, *supra*, and *Gonzales-Jasso* v. *Rogers*, 264 F.2d 584, the court definitely stated that testimony of a native-born United States citizen, unsupported by other proof, about the facts surrounding the expatriating act in issue may be considered sufficient as evidence worthy of belief and that *prima facie* proof of involuntariness must of necessity be overcome by clear, convincing and unequivocal evidence to the con-

---

[2] The draftsmen of the Nationality Act's expatriation provisions stated that it was designed to take away United States citizenship from persons who had shown that "their real attachment is to the foreign country and not to the United States." (Codification of United States Nationality Laws, H.R. Comm. Print, Pt. 1, 76th Cong., 1st Sess., V–VII)

[3] It is altogether consonant with this [the legislative] history [of section 401(c)] to place upon the Government the burden of proving voluntariness." (356 U.S. 135, 136.)

trary (*Nishikawa* v. *United States, supra*, at pp. 133–136, quoted above).

Significantly enough, the Government in both the *Gonzales* and *Gonzalez-Jasso* cases argued unsuccessfully in a manner not unlike the Immigration Service's contention here—respondent's statements that his acts of voting were involuntary, were self-serving, unsupported, uncorroborated ones and consequently valueless. In each instance, the court held that the alleged expatriate's statements that he acted involuntarily under trying circumstances were indeed sufficient to enable him to maintain his United States nationality, after specifically determining that the Government had failed to discharge its burden of proving the converse by the very strong, affirmative evidence required in so-called denationalization situations.[4]

The Immigration Service contends that the issue of voluntariness was never properly raised, because the only evidence on this point is the self-serving and uncorroborated statements of respondent, which the Service feels the special inquiry officer rejected as incredible.

However, the special inquiry officer in his decision stated only that he had some doubts concerning the substance of respondent's testimony, which were insufficient in law[5] to overcome the evidentiary requirement that the Government prove expatriation (including the element of voluntariness) by clear, unequivocal and convincing evidence. "Ordinarily, the opportunity of the trial court to observe the demeanor of the witness will be given great weight, and the court's conclusions of fact will not lightly be overturned (Fed. R. Civ. P. 52(a)). But in citizenship cases the appellate courts will 'reexamine the facts to determine whether the United States has carried its burden * * *' *Knauer* v. *United States*, 328 U.S. 654 at page 657 (1946)." *Gonzalez-Jasso* v. *Rogers*, 264 F.2d 584 (C.A.D.C., 1959).

---

[4] In *Gonzalez-Jasso* v. *Rogers, supra*, the Court said:

* * * there must be "solidity of proof which leaves no troubling doubt in deciding a question of such gravity as is implied in an attempt to reduce a person to the status of alien from that of citizen." *Baumgartner* v. *United States*, 322 U.S. at p. 670. The burden is on the Government to prove an act of expatriation, *Nishikawa* v. *Dulles*, 356 U.S. 129, 133 (1958), and it must do so by evidence which is "clear, unequivocal, and convincing," and which does not leave the issue in doubt. *Schneiderman* v. *United States*, 320 U.S. at p. 125.

[5] Or as it was phrased in the *Nishikawa* case at pp. 137, 138:

* * * Nor can the district judge's disbelief of petitioner's story of his motives and fears fill the evidentiary gap [of affirmative evidence of voluntariness of the act] in the Government's case * * * [for] the Government must in each case prove voluntary conduct by clear, convincing and unequivocal evidence.

In *Gonzalez-Jasso*, the Court also stated:

> \* \* \* But to establish a sound basis for expatriation, these statements must be satisfactorily corroborated, and the totality of the evidence must rise to the standard set by the Supreme Court. In criminal proceedings the rule is that extra-judicial admissions are insufficient to establish the *corpus delicti* or uphold the conviction without corroborative evidence. (citation) Though the "corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti* \* \* \* [it should] tend to establish the trustworthiness of the statement." (citations) We need not go so far as to say that these rules, or any others in the field of criminal law, are directly applicable to cases like the present. But they provide a helpful analogy. If uncorroborated admissions are insufficient to convict a man of a crime, they should hardly suffice to deprive him of his citizenship. (p. 587)

The Immigration Service's contentions attempt to reverse this reasoning, and necessarily reach an inappropriate conclusion. In the instant case, voluntariness being in issue, the question is whether the Government failed to prove this fact by the required clear and convincing evidence.

In 1951, respondent lived in a remote area of Greece where communication with the outside world was slight, and rumors, once started, were not easily stifled. Respondent, lacking educational advantages, became convinced that failure to vote in the 2 elections in question would result in his being branded a communist, together with being in danger of harm to his home and family. His fear of harm and reprisal was a genuine, though mistaken, belief, engendered by the prevailing mob atmosphere. These factors transformed respondent's acts from spontaneous actions of a free agent to that of involuntary conduct by one acting under extreme pressure or compulsion.

Respondent's 2 acts of voting in 1951, performed under the mistaken belief or inducement that he would be branded a communist if he abstained, were ineffective as an act of expatriation, for the essential element of voluntariness (the conscious exercise of a free choice) is lacking in these acts of voting (*Nishikawa* v. *Dulles, supra; Perez* v. *Brownell, supra; Kasumi Nakashima* v. *Acheson,* 98 F. Supp. 11 (S.D. Calif., 1951); *Gonzalez-Jasso* v. *Rogers, supra*).

Consequently, respondent is presently a United States citizen and a deportation proceeding is inappropriate. The decision of the special inquiry officer should be approved.

**Order:** It is directed that the order of the special inquiry officer be approved.