**In re RIVER PRINCESS CORPORATION, Debtor.**

**Bankruptcy No. 90 B 20031.**

United States Bankruptcy Court, S.D. New York.

May 6, 1991.

Newmark, Lamb, Dowling & Marchisio, Garden City, N.Y., for American Application Associates of Fairfield, Inc.

Finkel Goldstein Berzow & Rosenbloom, New York City, for debtor.

DECISION ON MOTION FOR AN ORDER GRANTING PERMISSION TO PERFECT MARITIME LIEN IN ADMIRALTY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The movant, American Application Associates of Fairfield, Inc. ("American"), contends that if a craft looks like a vessel,

floats like a vessel and is named like a vessel, it must be a vessel that is subject to a maritime lien for materials furnished to convert it to a floating restaurant. Because the vessel lacks liquid assets and is sinking financially, American has moved for permission to perfect and enforce its asserted maritime lien in admiralty for necessaries provided to the vessel, "River Princess", or in the alternative, that this court determine the priority of liens in accordance with admiralty law, as reflected in Title 46 of the United States Code.

The debtor, River Princess Corporation, opposes the motion on ground that American did not obtain a maritime lien against the "River Princess" and, in any event, lien enforcement is stayed pursuant to the automatic stay provisions imposed under 11 U.S.C. § 362(a).

## FINDINGS OF FACT

1. On February 12, 1990, the debtor, River Princess Corporation, filed with this court a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continues in operation of its property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. In the summer of 1986, the debtor purchased the vessel "River Princess" from the School of Seamanship in Piney Point, Maryland. The vessel was then employed as a school for seamen. It had formerly been a cruising vessel on the Potomac River and had been registered with the United States Coast Guard.

3. The debtor acquired the "River Princess" for the purpose of converting it to a floating restaurant and night club which would be permanently moored in Yonkers, New York. Hence, the debtor caused the vessel to be towed from Maryland to Yonkers, where it was docked at a park on the Hudson River in the City of Yonkers pursuant to an agreement with the City. The vessel is held by looped steel cables on cleats and with four lines. Spuds, which were picked up by a crane, were put through the vessel and into the mud bottom in order to prevent lateral movement. It may be boarded by a gangplank which is not permanently attached to the vessel. The vessel has a compass, but no engines or boilers. It is no longer documented with the U.S. Coast Guard.

4. After tying up the vessel at its mooring in the Yonkers park, the debtor proceeded to demolish the interior structure in preparation for refitting it as a restaurant and night club.

5. In October of 1987, the debtor entered into a contract with American to install the metal framing and drywalls to form bulkheads and separate restaurant rooms, kitchens, restrooms, etc. American furnished materials and labor for this purpose in the invoiced amount of $55,064.70, which was billed to the debtor and not paid. The last work billed by American was in January of 1988.

## DISCUSSION

Initially, this court must determine whether 46 U.S.C. § 971 or 46 U.S.C. §§ 31341 and 31342 are applicable for the purpose of ascertaining the extent to which the movant has a maritime lien on the "River Princess". Section 971 of Title 46 was repealed by Title I of Pub.L. 100–710 (effective January 1, 1989), and replaced by 46 U.S.C. §§ 31341 and 31342. As provided in Section 107 of Pub.L. 100–710(c), "[s]ection 102 of this Act and amendments made by that section [enacting this section and sections 31301 to 31309, 31321 to 31330 and 31341 to 31343 of this title] do not affect any civil action *filed* before January 1, 1989)." (emphasis added).

Although the contract between the parties was signed in October, 1987, and the work on the "River Princess" done from October, 1987 until January, 1988, the instant action was not *filed* until October 9, 1990. Since the action was filed after January 1, 1989, the applicable law is found in 46 U.S.C. §§ 31341 and 31342.[1] However,

---

1. 46 U.S.C. §§ 31341 and 31342 provide as follows:

**§ 31341. Persons presumed to have authority to procure necessaries**

(a) The following persons are presumed to

as observed by one court, the substance of the maritime lien provisions are the same, although the wording has changed. *See Interpool Ltd. v. Char Yigh Marine (Panama) S.A.,* 890 F.2d 1453, 1455, n. 3 (9th Cir.1989).

### Maritime Lien

The issue for determination is whether or not the materials furnished and the services performed by American were capable of giving rise to a maritime lien. It is first necessary to determine if the "River Princess" qualified as a vessel in 1987 when American furnished labor and materials to the craft under an agreement with the owner. If a craft is capable of being towed from one place to another on navigable waters, even as a barge, it will qualify as a vessel. *Hudson Harbor 79th St. Boat Basin, Inc. v. Sea Casa,* 469 F.Supp. 987 (S.D.N.Y.1979); *Hayford v. Doussony,* 32 F.2d 605 (5th Cir.1929); *The Ark,* 17 F.2d 446 (S.D.Fla.1926). The fact that materials and labor are furnished to a vessel which is within the admiralty jurisdiction is not conclusive in ascertaining if a maritime lien arose. The services and materials must be for the purpose of facilitating its use in navigation or maritime commerce. *Arques Shipyards v. The S.S. Charles Van Damme,* 175 F.Supp. 871, 872 (N.D.Cal. 1959). In the *Arques* case, the respondent vessel was towed to Oakland, California, where it was permanently connected to the mainland and opened for business as a restaurant. Thus, the vessel's status at the time the labor and materials were furnished was crucial in ascertaining the existence of a maritime lien. Similarly, in *J.C.*

*Penney–Gwinn Corp. v. McArdle,* 27 F.2d 324 (5th Cir.1928), *cert. den. sub nom Lancaster Iron Works, Inc. v. J.C. Penney–Gwinn Corp.,* 278 U.S. 632, 49 S.Ct. 31, 73 L.Ed. 550 (1928), it was held that in order for a maritime lien to arise against a vessel for supplies or services, the vessel must have been engaged at the time in a maritime venture. Therefore, it was found that no maritime lien arose against dredges employed for filling in land to bring it up to a required grade because they were not aiding or engaged in maritime commerce. The existence of a maritime lien must be strictly construed because it arises automatically without any filing or docketing requirements. This point was noted by the Supreme Court as follows:

> The maritime lien is a secret one. It may operate to the prejudice of prior mortgagees or of the purchasers without notice. It is therefore stricti juris, and will not be extended by construction, analogy, or inference.

*Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.,* 254 U.S. 1, 12, 41 S.Ct. 1, 4, 65 L.Ed. 97 (1920). In *Johnson & Towers Baltimore, Inc. v. The Dredge,* 241 F.Supp. 598 (D.Md.1965) a dredge was hauled or towed from time to time to new positions along the shore. Its onshore cables were attached to trees and its offshore cables were attached to anchors. It was used for producing sand and gravel sold commercially on the shore. It was capable of being used for maritime work, but it had not been so used since it was towed to its present mooring. The court held that the

---

have authority to procure necessaries for a vessel:
  (1) the owner;
  (2) the master;
  (3) a person entrusted with the management of the vessel at the port of supply; or
  (4) an officer or agent appointed by—
    (A) the owner;
    (B) a charterer;
    (C) an owner pro hac vice; or
    (D) an agreed buyer in possession of the vessel.
  (b) A person tortiously or unlawfully in possession or charge of a vessel has no authority to procure necessaries for the vessel.

**§ 31342. Establishing maritime liens**
  (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
    (1) has a maritime lien on the vessel;
    (2) may bring a civil action in rem to enforce the lien; and
    (3) is not required to allege or prove in the action that credit was given to the vessel.
  (b) this section does not apply to a public vessel.

dredge was not engaged in navigation so as to support a maritime lien against it.

 In the instant case, the "River Princess" had been withdrawn from navigation and was not engaged in any maritime activity when American agreed to install studs, metal framings and carpentry towards the conversion of the vessel to a floating restaurant and night club. Therefore, the materials and services furnished by American at the debtor's request were not then capable of giving rise to a maritime lien.

#### The Stay

Even if American could successfully establish a maritime lien against the "River Princess", it could not succeed in its motion for permission to perfect and enforce its maritime lien in admiralty. The filing of the debtor's Chapter 11 petition and the imposition of 11 U.S.C. § 362(a)(4) and (5) automatically stayed the enforcement of any maritime lien against the debtor and its property. *In re Louisiana Ship Management, Inc.*, 761 F.2d 1025 (5th Cir. 1985); *United States v. Le Bouf Bros. Towing Co.*, 45 B.R. 887 (E.D.La.1985). American has not sought relief from the automatic stay in accordance with 11 U.S.C. § 362(d) and therefore may not proceed to perfect and enforce its asserted maritime lien in admiralty.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(K).

2. The debtor's vessel, "River Princess", had been withdrawn from navigation and was not engaged in any maritime activity when American furnished materials and labor to the vessel, with the result that American did not obtain a maritime lien when it performed the activities in question.

3. American is stayed pursuant to 11 U.S.C. § 362(a)(4) from perfecting or en-

forcing its asserted maritime lien pursuant to admiralty law.

SETTLE ORDER on notice.