**In re HARBOUR LIGHTS MARINA, INC., Plaintiff–Appellee,**

v.

**Raymond G. WANDSTRAT, et al., Defendants–Appellants.**

Civ. No. C–1–92–957.
Adv. No. 1–91–0231.
Bankruptcy No. 1–91–06086.

United States District Court,
S.D. Ohio, W.D.

April 5, 1993.

**782**

Ernest Hanlin Bavely, Kelley, Grossheim, Bavely, Cincinnati, OH, for E. Hanlin Bavely, Trustee.

Marilyn Cranley Reece, Cincinnati, OH, for O. Jane Johnston.

Edward M. Craig, Cincinnati, OH, for Raymond G. Wandstrat.

Randal C. Berning, Ohio Atty. Gen., Columbus, OH, for Worker's Comp State of Ohio Bureau of Worker's Compensation.

David Staadeker, Cincinnati, OH, for Karen R. Bauer.

## ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT

SPIEGEL, District Judge.

This matter is before the Court on an appeal from the United States Bankruptcy Court, Southern District of Ohio under 28 U.S.C. § 158(a). The Appellant, O. Jane Johnson, has submitted a brief arguing for reversal of the judgment of the bankruptcy court (doc. 4), to which the Appellee, Trustee in Bankruptcy has responded (doc. 5), and to which the Appellant has replied (doc. 6).

### BACKGROUND

In 1985 Joseph and Edward Knue bought a sunken barge with the intention of converting it into a floating restaurant and marina. This venture was later incorporated under the name "Harbour Lights Marina, Inc." In 1987 the Appellant loaned Joseph Knue $15,000.00. This money was used to buy supplies and materials to convert the barge into a floating restaurant and bar. Appellant later loaned Knue an additional $9,843.00. These funds, too,

were used to buy supplies and materials. The restaurant opened for business in November 1987. By September of 1990 the restaurant closed permanently, and the barge and its contents were sold at auction.

The Appellant claims that she is not an unsecured creditor to the bankrupt corporation, but rather, due to the nature of her loans, a holder of a lien under the Federal Maritime Lien Act, 46 U.S.C. § 31342 (formerly 46 U.S.C. § 971) ("the ACT"). The Appellee claims that the Appellant does not qualify for a maritime lien under the ACT, and is therefore nothing more than an unsecured creditor.

On October 29, 1992, 146 B.R. 963, the United States Bankruptcy Court issued an order finding that the Appellant was not entitled to a maritime lien under the ACT. The Bankruptcy Court held that the Appellant is an unsecured creditor, and would have to share in the distribution to unsecured creditors on a pro-rata basis. For the following reasons we affirm the judgment of the Bankruptcy Court.

### STANDARD

When reviewing a bankruptcy court's decision, a district court functions as an appellate court, and applies the standard of review generally applied in the federal courts of appeals. *In re Matter of Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992); *see* 28 U.S.C. § 158(a). Thus, under 28 U.S.C. § 158(a), in our review of the bankruptcy court's decision, we must apply a clearly erroneous standard of review to findings of fact and a de novo standard of review to conclusions of law. *In re Daniels–Head & Associates*, 819 F.2d 914, 919 (9th Cir.1987).

### ANALYSIS

Under the ACT, a person furnishing "necessaries" to a "vessel" on the order of the owner "has a maritime lien on the vessel." Federal Maritime Lien Act, 46 U.S.C. § 31342 (formerly 46 U.S.C. § 971). Appellant claims that she is entitled to a maritime lien because she loaned money to the corporation which was used to purchased supplies and materials and "other necessaries" to convert the barge into a restaurant. The Bankruptcy Court held

that although the barge was a vessel within the meaning of the ACT, "since the vessel was not used in a maritime venture at the time the repairs to the craft were made" the barge had been effectively withdrawn from navigation and a lien could not have arisen. See Decision on Motions for Summary Judgment, United States Bankruptcy Court at 16–17, Attached as Exhibit 8, Certificate on Appeal.

The Appellant contends that the supplies or other necessaries need not be furnished for a maritime purposes in order to trigger the protection of the lien statute. She claims that because the bankruptcy court found that the barge was a "vessel," her furnishing funds to purchase materials, supplies and "other necessaries" entitles her to a maritime lien under the ACT. We disagree.

■ The fact that materials and supplies are furnished to a vessel which is within the admiralty jurisdiction is not conclusive in ascertaining if a maritime lien arose. *In re River Princess Corp.*, 126 B.R. 837, 839 (S.D.N.Y.1991). "The services and materials must be for the purpose of facilitating ... [the vessel's] use in navigation or maritime commerce." *Id.* Consequently, the furnishing of supplies and materials "cannot afford the necessary basis for a maritime lien, unless ... [the services are] maritime in ... nature...." *E.S. Binnings, Inc. v. M/V Saudi Riyadh*, 815 F.2d 660, 666 (11th Cir.1987); *McDermott v. The Off-Shore Menhaden Co.*, 262 F.2d 523, 524 (5th Cir.1959) ("other necessaries" should not be narrowly construed but should be held to include maritime services generally); *The Walter Adams*, 253 F. 20, 23 (1st Cir.1918) *aff'd*, 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97 (1920); *Exxon Corp. v. Central Gulf Lines, Inc.*, 707 F.Supp. 155, 158 (S.D.N.Y.1989) *aff'd*, 904 F.2d 33 (2d Cir. 1990). "Therefore, 'to give rise to a maritime lien, the occurrence out of which the ... dispute arose, must itself be maritime'...." *E.S. Binnings*, 815 F.2d at 666 (citations omitted).

■ As the bankruptcy court noted, the purpose of the maritime lien was to encourage capital adventures in the shipping industry while at the same time protecting those who must or volunteer to do work for or deal with the industry. 7A *Moore's Federal Practice*, ¶ .230[4–3] at 2805 (2d ed. 1993); *Detroit Trust Co. v. The Barlum*, 293 U.S. 21, 44–45, 48, 51–52, 55 S.Ct. 31, 38–39, 40, 41, 79 L.Ed. 176 (1934); *In re Alberto*, 823 F.2d 712, 716–17 (3rd Cir. 1987). The Supreme Court has also observed that the purpose of the maritime lien is to protect the vessel. *Piedmont Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 8–9, 41 S.Ct. 1, 3, 65 L.Ed. 97 (1920). "The maritime lien developed as a necessary incident of the operation of vessels. The ship's function is to move from place to place. She is peculiarly subject to vicissitudes which would compel abandonment of vessel or voyage, unless repairs and supplies were promptly furnished" *Id; The J.E. Rumbell*, 148 U.S. 1, 9, 13 S.Ct. 498, 499, 37 L.Ed. 345 (1892) ("The whole object of ... [the maritime lien] is to furnish wings and legs to the vessel, to get back for the benefit of all concerned; that is to complete her voyage"); *Payne v. SS Tropic Breeze*, 423 F.2d 236, 240–241 (1st Cir.), *cert. denied*, 400 U.S. 964, 91 S.Ct. 363, 27 L.Ed.2d 383 (1970) ("It is usually for the advantage of all parties having an interest in the ship, whether it be in the nature of ownership or security, that she be actively engaged in commerce and not left to rot in port. But to continue in active employment she must have supplies and services. To obtain them she must have credit. Admiralty law in most countries secures this for her by implying a maritime lien in favor of those who furnish such necessaries"); 70 Am.Jur.2d *Shipping* § 557 (1987).

■ In this case the Appellant loaned funds for the conversion of a barge into a floating restaurant, bar and marina which was secured to the land by public sewage, water and electric lines. The provision of these funds was not for the purpose of "facilitating ... [the vessel's] use in navigation or maritime commerce" despite the fact that the barge was *capable* of being unhooked and moved from place to place at some unspecified point in the future. See *In re River Princess Corp.*, 126 B.R. 837, 839 (S.D.N.Y.1991). Holding that the Appellant in this case is entitled to a maritime lien would therefore usurp the underpinnings of the maritime law and the purpose

of the maritime lien in particular. *See* 7A *Moore's Federal Practice*, ¶ .230[4–3] at 2805 (2d ed. 1993); *Detroit Trust Co.*, 293 U.S. at 44–45, 48, 51–52, 55 S.Ct. at 38–39, 40, 41; *Piedmont Coal*, 254 U.S. at 8–9, 41 S.Ct. at 3; *The J.E. Rumbell*, 148 U.S. at 9, 13 S.Ct. at 499; *Payne*, 423 F.2d at 240–24; 70 Am.Jur.2d *Shipping* § 557 (1987). Thus, although the bankruptcy court correctly found the barge to be a vessel, because the funds were loaned for wholly non-maritime purposes, the Appellant is not entitled to a maritime lien.

Accordingly, we hereby AFFIRM the Judgment of the Bankruptcy Court, Southern District of Ohio, and HOLD that the Appellant, O. Jane Johnson is an unsecured creditor, not entitled to a maritime lien under the Federal Maritime Lien Act, 46 U.S.C. § 31342 (formerly 46 U.S.C. § 971), and will share in the distribution to unsecured creditors on a pro-rata basis.

**SO ORDERED.**