In re **AULTMAN ENTERPRISES,**
d/b/a Terra Tile, Debtors.

**Jerrold D. Farinash, Appellant,**

v.

**Ellen B. Vergos, United States**
**Trustee, Appellee.**

No. 99–13563.

United States District Court,
E.D. Tennessee,
at Chattanooga.

July 20, 2001.

R. Thomas Stinnett, Betty Shelton, U.S. Bankruptcy Court, Eastern District of Tennessee, Kimberly C. Swafford, U.S.

Department of Justice, Office of the U.S. Trustee, Charles O. Ragan, Jr., Chattanooga, TN, for Aultman Enterprises.

Jerrold D. Farinash, Kennedy, Fulton, Koontz & Farinash, Chattanooga, TN, for Jerrold D. Farinash, Trustee.

## *MEMORANDUM*

COLLIER, District Judge.

In this appeal from a final decision [1] of the United States Bankruptcy Court for the Eastern District of Tennessee, *In re Aultman Enterprises, d/b/a Terra Tile,* Case No. 99–13563 (Bankr.E.D.Tenn.1995) (Cook, CJ.), Trustee Jerrold D. Farinash ("Farinash") challenges an August 8, 2000 order of the bankruptcy court denying his application *nunc pro tunc* to employ him and his law firm as counsel to the Trustee.

For the following reasons, the Court **AFFIRMS** the decision of the bankruptcy court.

## I. STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from bankruptcy court pursuant to 28 U.S.C. § 158. In determining appeals from bankruptcy court, this Court sits as an appellate court, reviewing the bankruptcy court's findings of fact under a clearly erroneous standard, but conducting a de novo review of the bankruptcy court's conclusions of law. *Fed. R. Bankr.P.* 8013; *In re Isaacman,* 26 F.3d 629, 630 (6th Cir.1994); *In re John Hicks Oldsmobile–GMC Truck, Inc.,* 192 B.R. 911 (E.D.Tenn. 1996); *Harbour Lights Marina v. Wandstrat,* 153 B.R. 781 (S.D.Ohio 1993). However, the Court may overturn matters within the discretion of the bankruptcy court only for an abuse of discretion. *Fed.*

---

1. The decision from which appellant appeals is found at document number 7 of the Record on Appeal and document number 34 of the bankruptcy record below. The Court will refer to the documents in the Record on Appeal as "Record ___, p. ___."

R. Bankr.P . 8003; *American Imaging Services, Inc. v. Eagle–Picher Industries, Inc.* (*In re Eagle–Picher Industries, Inc.*), 963 F.2d 855, 858 (6th Cir.1992); *accord Investors Credit Corp. v. Batie,* 995 F.2d 85, 88 (6th Cir.1993).

■ This Court reviews for an abuse of discretion the bankruptcy court's decision to grant or deny and application for *nunc pro tunc* approval of employment. *In re Keren Ltd. Partnership,* 189 F.3d 86, 88 (2d Cir.1999); *In re Atkins,* 69 F.3d 970, 973 (9th Cir.1995); *In the Matter of Singson,* 41 F.3d 316, 320 (7th Cir.1994); *In the Matter of Briscoe Enterprises, Ltd. II,* 994 F.2d 1160, 1170 (5th Cir.1993); *In re Land,* 943 F.2d 1265, 1266 (10th Cir.1991).

## II. FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute and may be summarized as follows:

On July 29, 1999, the Office of the United States Trustee appointed Farinash as trustee in bankruptcy for Aultman Enterprises under Chapter 7. Thereafter, Farinash and his law firm acted as attorneys to the trustee, but Farinash did not file an application for approval of employment (as required by 11 U.S.C. § 327(a)[2]) until June 30, 2000 (Record 25–1). Farinash admits his failure to file the application until almost a year after the date of his appointment was due to nothing more than

**2.** This statute reads, in relevant part:
Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

**3.** In his briefing and during oral argument, Farinash contended the bankruptcy court did

"simple oversight." On August 8, 2000, United States Bankruptcy Chief Judge John C. Cook denied the motion for *nunc pro tunc* approval, but approved the employment of Farinash's law firm effective June 30, 2000, the date the application was first filed. In his order, Chief Judge Cook recognized he had discretion to enter a *nunc pro tunc* approval.[3] However, citing the leading case of *In re Twinton Properties Partnership,* 27 B.R. 817 (Bankr. M.D.Tenn.1983), he denied the application on the grounds Farinash had failed to satisfactorily explain his failure to seek pre-employment approval. Farinash timely filed a notice of appeal from that decision on August 18, 2000 (Record 35). On July 13, 2001, the parties presented oral arguments before this Court in support of their positions.

## III. ISSUES ON APPEAL

The issues presented to this Court on appeal are:

A. What is the appropriate standard for determining whether an application for *nunc pro tunc* approval of employment pursuant to 11 U.S.C. § 327(a) may be granted?

B. Whether the bankruptcy court abused its discretion in denying the trustee's application for *nunc pro tunc* approval of employment in this case.

not believe it possessed discretion to enter *nunc pro tunc* approval. At oral argument, when the Court asked what Farinash thought the appropriate remedy would be if the Court determined the bankruptcy court erroneously concluded it did not have such discretion, Farinash admitted that, under those circumstances, remand to the bankruptcy court with instructions to apply the correct standard would be in order. Farinash, however, preferred this Court to exercise its discretion and grant him the ultimate relief he seeks.

## IV. DISCUSSION

### A. The bankruptcy court may, within its discretion, approve an application for employment *nunc pro tunc*, provided the extraordinary circumstances test set forth in *In re Twinton Properties* has been met.

The threshold question presented by this case is whether *nunc pro tunc* approval of the employment of a professional pursuant to 11 U.S.C. § 327(a) may be given, and if so, what standard should be used in deciding whether a particular *nunc pro tunc* application should be approved. The United States Court of Appeals for the Sixth Circuit has not yet addressed the issue. However, in the Court's opinion, the appropriate test to apply in this case is the extraordinary circumstances test described in *In re Twinton Properties Partnership*, 27 B.R. 817 (Bankr.M.D.Tenn. 1983). Most of the Courts of Appeals that have dealt with this question have applied some variation of the *Twinton Properties* test. *See, e.g., In re Jarvis*, 53 F.3d 416, 418 (1st Cir.1995); *In re Keren Partnership*, 189 F.3d 86 (2d Cir.1999); *In re Arkansas Co. Inc.*, 798 F.2d 645 (3d Cir. 1986); *In the Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983); *In re Atkins*, 69 F.3d 970, 974 (9th Cir.1995); *In re Land*, 943 F.2d 1265, 1268 (10th Cir.1991).

In *In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984), the Sixth Circuit recognized, without deciding, the possibility *nunc pro tunc* approval of an application for employment might be appropriate in some cases. *Id.* at 539 n. 6. The Court of Appeals did not provide any guidance as to what standard should be used, should future courts recognize the bankruptcy court's power to grant *nunc pro tunc* approval. However, at least two bankruptcy courts and one district court in this circuit have adopted a formulation of the extraordinary circumstances test. *See, e.g. In re Pica Systems, Inc.*, 124 B.R. 30 (E.D.Mich.1991); *In re EWI, Inc.*, 208 B.R. 885 (Bankr.N.D.Ohio 1997); *In re McDaniels*, 86 B.R. 128 (Bankr. S.D.Ohio 1988) (quoting with approval and adopting *In re Twinton Properties* criteria).

In determining what standard should be applied when the bankruptcy court is considering an application for *nunc pro tunc* approval of employment, this Court engaged in a tripartite analysis. First, the Court set out to discern the purposes behind the approval requirement and to examine the extent to which those purposes may be frustrated by allowing after the fact applications. Second, the Court had to decide whether the bankruptcy court is actually vested with the authority to go beyond the strict letter of the statutory requirements and grant an application *nunc pro tunc*. Had the Court answered this question in the negative, the inquiry would have been at an end, and the applicable standard would be an absolute prohibition against *nunc pro tunc* approval. Because, however, the Court determined the bankruptcy court does have the requisite power, the Court then turned to formulation of a standard that would best strike a balance between the purposes of the bankruptcy laws and the equitable goal of compensating an otherwise eligible professional for valuable services rendered to the trustee.

#### 1. Purposes Behind the Approval Requirement

A trustee or debtor-in-possession may not employ an attorney, accountant, or other professional person without the court's express approval. 11 U.S.C. § 327(a). Rule 2014(a) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE outlines

the manner in which court approval is obtained. Specifically, Rule 2014 requires:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Section 327 requires "prior court authorization of a professional's employment … to prevent volunteerism and to assist the court in controlling administrative expenses." *In re McDaniels*, 86 B.R. at 129.

■ "Were the law otherwise, there would be no limit to the burden which might be placed upon an estate if attorneys for the bankrupt or individual creditors could, by doing work which it is not their duty to do, by assisting the trustee, without an order of court allowing their special employment, burden the estate with the added cost of performing work which it is the duty of others to perform." *In re Owl Drug Co.*, 16 F.Supp. 139, 148 (D.Nev.1936). Furthermore, because professionals employed by the estate must "not hold or represent an interest adverse to the estate," and must be "disinterested persons," the requirement of prior court approval also prevents unscrupulous individuals from taking advantage of the bankruptcy process to advance their own self-interest. *See* 11 U.S.C. § 327. "Courts have consistently held that attorneys who render services to trustees without court approval may forfeit their rights to compensation from the estate." *In re McDaniels*, 86 B.R. at 129.

■ Clearly, allowing any attorney to dispense with the requirement of obtaining court approval *before* rendering services to the estate has the potential to frustrate the purposes behind the statutory scheme. If the courts are to perform a screening process both to verify the necessity of employment and to ensure the neutrality of the person employed, that function is most efficiently and effectively performed in advance, as opposed to after the fact. Before the fact approval also allows the court to control or limit expenses and thereby preserve the bankruptcy estate. A rule of prior approval also protects the interests of the professionals who will be performing services for the trustee. Because the courts will not necessarily approve employment in every case, a wise professional will ensure that prior approval has been obtained before the professional expends resources for which he or she will not be reimbursed without the prior approval. Thus, prior approval is, for very good reason, to be preferred in *every* case over *nunc pro tunc* approval, because, to a certain extent, waiving the pre-employment application requirement will impair the ef-

ficient administration of the bankruptcy process and might possibly encourage some professionals to engage in detrimental reliance.

## 2. Authority of Bankruptcy Court to Grant *Nunc Pro Tunc* Approval

Given the fact *nunc pro tunc* approval is disfavored, the Court is still of the belief the bankruptcy court does have power to grant an application for retroactive approval of employment in exceptional cases. As discussed earlier, the Sixth Circuit has not conclusively resolved this issue one way or the other, but several bankruptcy courts in this circuit and at least one district court have determined *nunc pro tunc* approval may be appropriate under some circumstances. Furthermore, every circuit court to address the question has concluded the bankruptcy court may grant after the fact approval in appropriate situations. *See In re Jarvis,* 53 F.3d at 419–20 (1st Cir.1995) (joining Third, Seventh, and Ninth Circuits in holding bankruptcy courts have equitable power to entertain and approve applications for attorney employment and fees earned before formal court approval of attorney employment); *see also In re Keren Ltd. Partnership,* 189 F.3d 86, 87–88 (2nd Cir.1999) (citing *In re Jarvis,* favorably and concluding bankruptcy court has that equitable power); *In re Triangle Chems., Inc.,* 697 F.2d 1280, 1286–89 (5th Cir.1983) (analyzing cases and statutes and holding bankruptcy courts have equitable power to retroactively approve employment upon proper showing all other requirements for employment under § 327 were met); *Lavender v. Wood Law Firm,* 785 F.2d 247, 248 (8th Cir. 1986) (holding "in limited circumstances, the bankruptcy court as a matter of fundamental fairness may exercise its discretion and enter a nunc pro tunc order authorizing compensation.").

■ Statutory law also supports a finding the bankruptcy court has authority to grant *nunc pro tunc* approval of employment. 28 U.S.C. § 157(b)(1) provides, in pertinent part:

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(2) sets out a list of "core proceedings." Included in this list are "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). Thus, an application for *nunc pro tunc* approval of employment "is a core proceeding as the issues in that application principally involve the employment and compensation of a professional person under 11 U.S.C. §§ 327, 328 and 330." *In re McDaniels,* 86 B.R. at 132; *see also In re STN Enterprises, Inc.,* 73 B.R. 470 (Bankr.D.Vt.1987); *In re United Equipment Sales Co.,* 47 B.R. 818 (Bankr. W.D.Mich.1985). 11 U.S.C. § 105 further confers upon the bankruptcy court the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

■ Because, in some circumstances, an order of *nunc pro tunc* approval may be "necessary or appropriate" to the administration of the bankruptcy laws, such orders are within the bankruptcy court's power to grant, at least to the extent the exercise of that power is consistent with and does not frustrate the purposes behind section 327's approval requirement. Furthermore, the bankruptcy court, "[i]n the exercise of its equitable jurisdiction ... has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done

in the administration of the bankrupt estate." *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Accordingly, the Court concludes the bankruptcy court has the power to grant an application for *nunc pro tunc* approval of employment, provided the applicant meets all the other requirements of section 327.

### 3. Balancing Purposes of Pre–Approval Requirement With Equitable Considerations

■■ Even presuming the bankruptcy court does have the power to grant *nunc pro tunc* approval of employment where it appears from the application section 327 has been otherwise satisfied, a rule constraining the exercise of that authority to a very limited number of cases is wise. The routine granting of *nunc pro tunc* approval in every case where it was sought, regardless of the reasons offered for the trustee's failure to comply with section 327 and Rule 2014, would only serve to encourage the exploitation of the bankruptcy estate and the detrimental reliance the pre-approval requirement was designed to prevent. Generally, courts should try to hold parties to strict compliance with section 327, especially in the case of attorneys who may be properly charged with knowledge of the law. *In re McDaniels*, 86 B.R. at 130. The courts should also, however, be able to identify those cases in which blind adherence to procedural formalities would work an injustice.

The nine criteria set forth in *In re Twinton Properties*, provide solid guidelines for courts to identify those cases in which blind adherence to procedural formalities would work an injustice.

■■ The nine criteria set forth in *In re Twinton Properties*, provide solid guidelines for courts to follow when determining whether *nunc pro tunc* approval should be granted. The *Twinton Proper-*ties factors serve to ensure both that the purposes of section 327 are not frustrated and that "[n]unc pro tunc applications [will] be the extraordinary exception rather than the accepted practice." *Id.* at 819–20. These nine factors, which must be proved by clear and convincing evidence, are as follows:

1. The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;

2. The party for whom the work was performed approves the entry of the nunc pro tunc order;

3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

4. No creditor or party in interest offers reasonable objection to the entry of the nunc pro tunc order;

5. The professional satisfied all the criteria for employment pursuant to 11 U.S.C. § 327 and Rule 2[014] of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;

6. The work was performed properly, efficiently, and to a high standard of quality;

7. No actual or potential prejudice will inure to the estate or other parties in interest;

8. The applicant's failure to seek pre-employment approval is satisfactorily explained; and

9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

*Id.* at 819–20. Because the Court believes these factors will sufficiently assist the bankruptcy court in identifying those cases where equitable considerations weigh in favor of *nunc pro tunc* approval, the Court finds *In re Twinton Properties* sets forth the appropriate test to be used in evaluating applications for *nunc pro tunc* approval of employment.

**B. The bankruptcy court did not abuse its discretion in denying the trustee's application for *nunc pro tunc* approval of employment.**

▉▉▉▉▉ After applying the *Twinton Properties* factors to this case, this Court believes they dictate affirmance of the bankruptcy court's decision to deny Farinash's application for *nunc pro tunc* approval of employment. The question presented here is whether the bankruptcy court abused its discretion in determining whether "simple oversight" could constitute a "satisfactory explanation" for his failure to seek pre-employment approval. The *Twinton Properties* court made clear that *nunc pro tunc* approval should be the "extraordinary exception," indicating only "extraordinary" circumstances will justify excusing the pre-approval requirement. For the reasons discussed above, this inherent limitation of the bankruptcy court's authority to grant *nunc pro tunc* approval is the best way to balance the purposes of section 327 with the equitable goal of just compensation.

Courts applying the *Twinton Properties* criteria and other versions of the extraordinary circumstances test have consistently held mere oversight is not enough to justify a professional's failure to obtain prior approval. *See, e.g., In re Jarvis,* 53 F.3d at 421; *In re Land,* 943 F.2d at 1265; *In re Arkansas Co.,* 798 F.2d at 651; *In re B.E.S. Concrete Products, Inc.,* 93 B.R. 228, 233 (Bkrtcy.E.D.Cal.1988). Even those courts that have adopted a more lenient "excusable neglect" standard have held "simple neglect" is insufficient to excuse non-compliance with section 327. *In re Singson,* 41 F.3d 316, 319 (7th Cir.1994). Additionally, "[l]ogic and experience dictate that if the category of extraordinary circumstances were expanded to include mere oversight, the modifying adjective 'extraordinary' would be completely emptied of its meaning." *In re Jarvis,* 53 F.3d at 421. Case law and common sense both support a conclusion that allowing "mere oversight" to justify failure to comply with section 327 would result in the exception, *post facto* approval of employment, to swallow the rule which requires prior court approval before the services of a professional may be retained. *In re Music Store, Inc.,* 241 B.R. 752, 753 (Bankr. N.D.Okla.1999) ("Neglect by debtor's counsel does not justify *nunc pro tunc* retention of professionals. If such neglect constituted 'extraordinary circumstances,' the rule would soon be swallowed whole by the exception.").

At oral argument Farinash contended simple oversight in the particular circumstances of this case constituted a "satisfactory explanation" as that term is used in *Twinton Properties.* However, he also acknowledged that, in the majority of cases involving failure to seek prior approval of employment, simple oversight, and not ethical conflicts or bad faith, would be offered as an explanation for that failure. If this Court were to hold simple oversight was a "satisfactory explanation," then the most common and typical reason for failure to obtain prior approval would be sufficient to justify granting *nunc pro tunc* approval. Thus, *nunc pro tunc* approval would be granted in the majority of cases where it was sought. Such a result seems to be at odds with the holding in *Twinton Properties* which indicated only exceptional, as opposed to typical, circumstances

would justify granting of a *post facto* employment application. Such a result would render the statutory scheme an empty formality and would frustrate the purposes underlying the pre-approval requirement in the first place.

Farinash also argued the bankruptcy court should have focused more on the last *Twinton Properties* factor, *i.e.,* whether the applicant exhibits a pattern of inattention or negligence in soliciting judicial approval for the employment of professionals. This factor looks to other cases in which the trustee was involved and not the particular case to determine whether the trustee's present failure to obtain approval is part of a practice of dilatory behavior. In essence, Farinash contends *nunc pro tunc* approval should be granted unless the applicant has a history of repeated noncompliance with the requirements of section 327 and Rule 2014. Such a result would allow neglectful applicants a number of free passes before the rule would become effective against them, effectively rewriting section 327 and Rule 2014 to include a very large exception.

Last, Farinash argued the bankruptcy court did not exercise its discretion because the bankruptcy court erroneously believed it had no discretion to grant the requested relief. Farinash based this argument on the following statement in the bankruptcy judge's opinion:

> This Court declines to follow the ruling of *In re Gutterman* on the basis that allowance of mere oversight as a satisfactory explanation for the failure to timely file an application to employ a professional would eviscerate the holding in *Twinton Properties* and would result in a precedent wherein the Court would be required to allow all *nunc pro tunc* applications.

(Record 7, p. 2). The Court does not read this language as narrowly as does appel-

lant. It is clear the bankruptcy court was familiar with *Twinton Properties* and the factors listed there. In fact, the opinion makes clear the bankruptcy court applied those factors and simply gave dispositive weight to the eighth factor. Thus Chief Judge Cook, rather than failing to recognize his discretionary authority, clearly exercised that authority in denying the application. Thus even if the Court disagreed with the bankruptcy court's application of the *Twinton Properties* factors, the Court could not reverse bankruptcy court's discretionary decision absent an abuse of discretion.

Based upon the record, the applicable law, and the arguments of counsel, the Court concludes the bankruptcy court correctly determined "simple oversight," without more, can never be a satisfactory explanation for failure to comply with section 327. Consequently, the Court does not believe the bankruptcy court abused its discretion in denying Farinash's application for *nunc pro tunc* approval of employment. Even if the Court believed simple oversight might be sufficient in some cases, the Court still could not say the bankruptcy court abused its discretion in this case, as would be required to justify a reversal.

## V. CONCLUSION

For all the aforementioned reasons, the decision of the bankruptcy court will be **AFFIRMED**.